JUDGE ABRAMS

15 CV 02472

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                              :

LYNN TILTON; PATRIARCH PARTNERS,  :
LLC; PATRIARCH PARTNERS VIII, LLC;  :
PATRIARCH PARTNERS XIV, LLC; and   :
PATRIARCH PARTNERS XV, LLC,       :
                              :

               Plaintiffs,  :   15-cv-

                              :   **COMPLAINT FOR**
            v.                :   **DECLARATORY AND**
                              :   **INJUNCTIVE RELIEF AND**
SECURITIES AND EXCHANGE        :   **DEMAND FOR JURY TRIAL**
COMMISSION,                    :
                              :

               Defendant.  :
                              :
------------------------------------------------------X

RECEIVED
APR 0 1 2015
U.S.D.C. S.D. N.Y.
CASHIERS

       Lynn Tilton, Patriarch Partners, LLC; Patriarch Partners VIII, LLC; Patriarch Partners

XIV, LLC; Patriarch Partners XV, LLC (collectively, "Patriarch" or "Plaintiffs") for their

complaint against the Securities and Exchange Commission ("SEC" or the "Commission") allege

as follows:

<u>Preliminary Statement</u>

     1.     The SEC's program for administrative enforcement proceedings violates Article II

of the U.S. Constitution, which states that the "executive Power shall be vested in a President of

the United States of America," U.S. Const., art. II, § 1, and that "the Congress may by Law vest

the Appointment of such inferior Officers, as they think proper, . . . in the Heads of

Departments," *id.* § 2, cl. 2.

     2.     An SEC Administrative Law Judge ("SEC ALJ") presides over an administrative

proceeding.  Statutes and regulations make clear that SEC ALJs are executive branch "officers"

within the meaning of Article II.  The Supreme Court has held that the Commission is a

"Department" of the United States, and that the Commissioners collectively function as the

"Head" of the Department with authority to appoint such "officers" as Congress authorizes through legislation. *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 561 U.S. 477 (2010) ("*Free Enterprise*").

3.     The Supreme Court also has held that such officers – charged with executing the laws, a power vested by the Constitution solely in the President – may not be separated from Presidential supervision and removal by more than one layer of tenure protection. In particular, if an officer can be removed from office only for good cause, then the decision to remove that officer cannot be vested in another official who, too, enjoys good-cause tenure. *Id.*

4.     Yet SEC ALJs have not been appointed by the SEC Commissioners, as the Constitution requires. And SEC ALJs enjoy at least two – and likely more – layers of tenure protection. The SEC administrative proceedings therefore violate Article II and are unconstitutional.

5.     The SEC Division of Enforcement investigated Plaintiffs for more than five years – beginning at least as early as December 2009 and continuing through March 2015. On March 30, 2015, the SEC issued an Order Instituting Proceedings ("OIP"), commencing an administrative proceeding against Plaintiffs. The OIP recited the Division of Enforcement's allegations of violations of the federal securities laws. The OIP ordered that a public hearing for the taking of evidence be convened within 60 days before an SEC ALJ. The OIP further ordered that the SEC ALJ issue an initial decision within 300 days addressing whether the allegations in the OIP are true; what if any remedial action is appropriate and in the public interest; and whether Plaintiffs should be subject to injunctive relief and ordered to pay monetary penalties and disgorgement.

6.     Declaratory and injunctive relief is necessary to prevent Plaintiffs from being compelled to submit to an unconstitutional proceeding and from suffering irreparable reputational and financial harm – all without meaningful judicial review.   Moreover, the Commission retains lawful authority to commence an enforcement action against Plaintiffs in a constitutional forum – namely, U.S. District Court.

<u>**Jurisdiction, Venue, and Parties**</u>

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1346, 1651, 2201 and 5 U.S.C. §§ 702 and 706.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

8.     Ms. Tilton is a natural person, and a citizen and resident of Florida.

9.     Patriarch Partners, LLC is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business in New York County, New York.  Ms. Tilton, through an affiliated entity, owns Patriarch Partners, LLC, which is a private equity investment firm focused on restructuring and rebuilding distressed American companies.

10.     Patriarch Partners VIII, LLC; Patriarch Partners XIV, LLC; and Patriarch Partners XV, LLC are limited liability companies organized and existing under the laws of the State of Delaware and having their principal place of business in New York County, New York.  They are owned, through affiliated entities, by Ms. Tilton and a trust for the benefit of her daughter, and are the collateral managers of distressed debt investment funds structured as collateral loan obligations ("CLOs").

11.     The SEC is an agency of the United States government, headquartered in Washington, D.C.

12.     It is appropriate and necessary for this Court to exercise jurisdiction over Plaintiffs' claim because (a) without judicial review at this stage, meaningful judicial review will be foreclosed; (b) Plaintiffs' claim is wholly collateral to the review provisions of the securities laws; and (c) Plaintiffs' claim is not within the particular expertise of the SEC.

13.     The SEC's administrative machinery does not provide a reasonable mechanism for raising or pursuing Plaintiffs' claims.   The SEC's Rules of Practice do not permit counterclaims against the SEC, nor do they allow the kind of discovery of the SEC personnel necessary to elicit admissible evidence of such claims, such as interrogatories and demands for admissions.   Meaningful judicial review cannot await an appeal to the U.S. Court of Appeals following a final Commission decision.   The curtailed ALJ proceeding is unlikely to create a full record on Plaintiffs' claims adequate for review in the Court of Appeals.   As described in greater detail below, Plaintiffs perform a sensitive role managing investment funds and deeply distressed companies that employ tens of thousands of people.   If they are forced to undergo an unconstitutional administrative proceeding, and are found liable, it may well be too late to salvage important value for the funds.   The OIP allegations do not take issue with Ms. Tilton's and Patriarch's performance of their vital function in executing the investment strategy of turning around distressed businesses, and an unconstitutional administrative proceeding should not be permitted to interfere with such performance and put American jobs at risk.   The SEC ALJ is in no position to rule that he or she has been unconstitutionally appointed and has no legal authority whatsoever.   And the Commission, having ordered the administrative proceeding and directed action by the SEC ALJ, is in no position to take a fresh look at the constitutional infirmities of its own ALJ program.

14.     Plaintiffs' claims are wholly collateral to the review provisions in the federal securities laws.  Plaintiffs challenge the constitutionality of the SEC ALJ program on its face, and their claims do not depend upon the facts of this particular case (the liability or lack of liability for the securities violations alleged).  Their claim is that they should not stand trial in an unconstitutionally structured forum.

15.     Plaintiffs' constitutional claims are not within the particular expertise of the SEC. The particular expertise of the SEC is the federal securities laws.  Plaintiffs here raise claims under Art. II of the Constitution, provisions of which do not ordinarily, if ever, present issues for adjudication by the Commission.  Indeed, it would be inherently difficult for the Commission to consider the claims here in a neutral way given its responsibility for its own administrative proceedings, its allowance of improper ALJ designations, and the fact that it sent this complex, long-standing matter to an ALJ for resolution.

## Background

16.     Ms. Tilton founded Patriarch Partners, LLC in 2000 and is its CEO.  Through her ownership of Patriarch and its affiliates, Ms. Tilton runs one of the largest women-owned businesses in the United States.   Patriarch has restructured and rebuilt many companies, including well-known American brands such as Rand McNally, Stila Cosmetics, Dura Automotive and MD Helicopters.

17.     Patriarch's investment funds, Zohar CDO 2003-1, Limited; Zohar II 2005-1, Limited; and Zohar III, Limited (collectively, "Zohar Funds"), were structured as CLOs, which raise cash by issuing debt to outside investors, known as noteholders.  The original noteholders were exclusively the most sophisticated of institutional investors.  Ms. Tilton, through personal affiliates, is the principal equity owner of the Zohar Funds.

18.     The Zohar Funds' principal investment strategy, unique among CLOs, was to acquire deeply distressed companies, make loans to them, and implement a long-term turnaround strategy to build value for the funds and their noteholders.  As part of this strategy, the Zohar Funds have invested more than $2.5 billion raised from the Zohar Fund noteholders in the debt and equity of distressed companies.  In addition to Patriarch's role as the collateral manager of the Zohar Funds, Ms. Tilton also guides the management of these portfolio companies in her role as manager and/or CEO of the portfolio companies, and Patriarch's affiliates provide operational and management services and work day-to-day on company business.  This long-term strategy requires that Patriarch have sufficient time and flexibility to provide the Zohar Funds' deeply distressed companies with the support necessary to effect a turnaround and maximize value.

19.     Because the Zohar Funds' portfolio companies were deeply distressed, they often had difficulty paying the full amount of high stated interest on their loans in a timely manner – particularly during and after the global financial crisis.  Accordingly, in its role as collateral manager, Patriarch frequently deferred or forgave interest payments due from portfolio companies, thereby modifying loans for companies that could not pay the full stated interest.

20.     This was fully disclosed to noteholders, as various transaction documents – including trust indentures governing each of the Zohar Funds – made clear that these deeply distressed loans likely would require extensive amendment and restructuring by Patriarch.  Moreover, the amounts of interest paid and the classifications of loans were transparent to noteholders, with a third-party trustee publishing monthly and quarterly reports and related materials ("trustee reports") detailing such information in the aggregate and on a loan-by-loan basis.  The Zohar Funds' sophisticated investors could download and analyze the information in these detailed trustee reports.

21.    Ms. Tilton's personal reputation and pivotal role at Patriarch are integral to scores of Zohar Fund portfolio companies, tens of thousands of American jobs, and more than two billion dollars of outstanding notes.

22.    Ms. Tilton is not registered with the Commission as an investment advisor.  Until early 2012, Patriarch was not required to be a registered investment advisor under the regulatory regime prevailing at that time.  In early 2012, as newly required by Section 403 of the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203), Patriarch Partners XV, LLC registered with the SEC as an investment adviser.  The SEC approved Patriarch Partners XV, LLC's registration effective March 2012.

### The SEC Investigation

23.    The Commission long has acknowledged that "[t]he power to investigate carries with it the power to defame and destroy."  17 C.F.R. § 200.66.  The Staff of the Enforcement Division has investigated Ms. Tilton and Patriarch for an unusually prolonged period.  The first document request was issued December 15, 2009, seeking information dating to 2000.  The Staff subpoenaed and reviewed more than four years of emails of Ms. Tilton and certain other Patriarch employees without regard to subject matter or search terms.  Even this month the Staff has continued to collect information.

24.    The Staff cycled through various areas of inquiry and lead investigators, as the case migrated from the Home Office in Washington, D.C. to the Denver Regional Office.  On information and belief, the Staff along the way has issued dozens of subpoenas and has spoken with dozens of witnesses.

25.     On October 4, 2014, the Staff of the Enforcement Division issued a Wells Notice indicating that it had reached a preliminary conclusion that Ms. Tilton and Patriarch had violated various sections of the Investment Advisers Act.  The heart of the Staff's theory was – and is – a hotly-contested contractual interpretation of the Zohar Fund trust indentures, which the Staff claims required greater disclosures to noteholders.  Such issues of contract interpretation, even if truly disputed between the parties to the contract, are not typically the subject of an SEC proceeding but rather are left to dispute resolution between sophisticated, well-financed parties.

26.     Plaintiffs provided a written submission in response to the SEC's Wells Notice setting forth the reasons why such charges would be inappropriate and unwarranted and why the evidence plainly contradicts the Staff's theory.   In a supplemental submission, Plaintiffs explained why any enforcement proceeding authorized by the Commission should be in U.S. District Court, rather than an administrative proceeding, which would be constitutionally infirm.

### The SEC's Chosen Forum

27.     The securities laws provide the SEC with the discretion – guided by no statute, regulation, or established practice – to bring an enforcement action either in U.S. District Court or in internal SEC administrative proceedings.

28.     As one of the current Commissioners recently observed:

> Our enforcement program could . . .benefit from a look through the lens of fairness.  In order to ensure that the Commission does not engage in arbitrary or capricious conduct in enforcement matters, the Commission should formulate and adhere to a consistent set of guidelines.
>
> . . . .
>
> To avoid the perception that the Commission is taking its tougher cases to its in-house judges, and to ensure that all are treated fairly and equally, the Commission should set out and implement guidelines for determining which cases are brought in administrative proceedings and which in federal courts.

Commissioner Michael S. Piwowar, *A Fair, Orderly, and Efficient SEC*, Remarks at the "SEC Speaks" Conference 2015.

29.     To date, the Commission has announced no such guidelines.  The Director of Enforcement has defended the push to administrative proceedings before Congress, in speeches and at panel discussions without articulating a principled set of standards for evaluating and recommending the administrative option.

30.     Before an oversight committee of Congress on March 19, 2015, the Director testified that over the last fiscal year the Division tried a majority (57%) of its cases in District Court, with the rest before ALJs.  But the question remains how it was decided to send a minority of contested proceedings to ALJs.  Pressed to explain the standards for choosing a forum, the Director's responses were largely rhetorical.  "We use the forum that we think is appropriate for the goals of investor protection," he testified, later adding, "I have not heard criticism from investors about the administrative law judges procedure." Of course, investors are not respondents in those proceedings, do not have their careers at stake and have access to the U.S. District Courts to pursue federal securities law claims as plaintiffs.

31.     The Commission's history does not support an administrative proceeding in this case.  Ms. Tilton is not a registered investment advisor.  She is not subject to the traditional administrative discipline of registered parties.  For its first 75 years, the Commission could not seek monetary penalties from an unregistered person such as Ms. Tilton without proceeding in U.S. District Court.  The Dodd-Frank Act expanded the Commission's power to seek monetary penalties against unregistered parties through an administrative proceeding.  But the Commission remains authorized to seek those same remedies in District Court, as it has done for decades.  And, indeed, the Commission has continued to go to District Court routinely with complex cases

against investment advisors.   In the past two years (March 2013 through March 2015), the Commission has brought 17 actions against investment advisors in District Court.

32.     Patriarch likewise was unregistered during half of the period of this investigation and during most of the conduct at issue.  Before Dodd-Frank, an entity advising an investment fund (as do certain of the Patriarch entities) did not register with the Commission as an investment advisor.  Dodd-Frank, however, required advisors to funds, with limited exceptions, to register for the first time.  As a result, certain Patriarch entities became registered advisors in May 2012, two and one-half years after the Staff's initial document request in December 2009. The conduct under review went back many years earlier in the pre-registration era, with the Staff requesting information dating back to 2000, even before the creation of certain Patriarch entities named in the Staff's Wells Notice.

33.     The limited discovery available before an ALJ and the speedy hearing required by Commission rules are fundamentally inconsistent with the type of wide-ranging and in-depth investigation carried out by the Staff for more than five years in this particular case.   The discovery available in administrative proceedings is nothing like the discovery available in U.S. District Court.  Under the most extended schedule permitted by Commission rules, an ALJ must issue an initial decision within 300 days of the Order Instituting Proceedings ("OIP").   Rule 201.360(a)(2).   To allow time for drafting an initial decision in that time frame, SEC rules contemplate that the hearing will take place four months after the OIP.

34.     This schedule and format are unworkable in a case of this age, depth and complexity.  It would be difficult for Patriarch meaningfully to digest the investigative file in this case, assembled by the Staff over the course of more than five years and comprising documentation spanning a far longer period, so as to prepare adequately for trial in four months.

All indications are that the Staff has sought information from numerous third parties, not only from Patriarch itself. The volume of electronic data produced by Patriarch alone is illustrative of the depth and breadth of the Staff's demands for information, and we do not yet know the particulars of how the Staff intends to make use of this high volume of information to support its various theories. The Commission's own rules demonstrate that it has never contemplated its administrative forum would be used for a case of this type.

*The Administrative Proceeding*

35.     An administrative proceeding is an internal SEC hearing, litigated by SEC trial attorneys and governed by the SEC's Rules of Practice ("Rules of Practice," or "RoP"), in which an SEC ALJ serves as finder of fact and of law.

36.     Unlike federal court, administrative proceedings do not afford juries to litigants.

37.     The Federal Rules of Civil Procedure do not apply in an administrative proceeding; they do apply in federal court.

38.     Similarly, the Federal Rules of Evidence do not apply in an administrative proceeding as they do in federal court. Any evidence that "can conceivably throw any light upon the controversy," including hearsay, "normally" will be admitted in an administrative proceeding. *In the Matter of Jay Alan Ochanpaugh*, Exchange Act Rel. No. 54363, 2006 SEC LEXIS 1926, *23 n.29 (Aug. 25, 2006).

39.     Discovery is limited in administrative proceedings. Unlike in federal court, depositions are generally not allowed. RoP 233, 234.

40.     The SEC Rules of Practice do not provide respondents the opportunity to test the SEC's legal theories before trial via motions to dismiss, which are available in federal court.

41.     The SEC Rules of Practice do not allow respondents to assert counterclaims against the SEC.  Federal court defendants may assert counterclaims against their adversaries.

42.     The SEC Rules of Practice require the hearing to take place, at most, approximately four months from the issuance of the SEC's Order Instituting Proceedings ("OIP").  In its discretion, the SEC can require the hearing to occur as early as one month after the OIP is issued.  The SEC does not need to start making available the limited discovery afforded to administrative proceeding respondents until seven days after the OIP is issued.

43.     Some observers have found that the SEC has succeeded much more often in administrative proceedings, where it enjoys the procedural advantages described above, than in federal district courts.  Gretchen Morgenson, *At the S.E.C., a Question of Home-Court Edge*, N.Y. TIMES, Oct. 5, 2013.

44.     Any appeal from the SEC ALJ's decision goes to the SEC itself: the very body which, prior to the administrative proceeding, determined that an enforcement action was warranted – and the SEC is empowered to decline to hear the appeal, or to impose even greater sanctions.  A final order of the Commission, after becoming effective, may then be appealed to a United States Court of Appeals.

## SEC ALJs

45.     SEC ALJs, who preside over administrative proceedings, exercise authority and discretion that makes them officers for the purposes of Article II of the U.S. Constitution.

### Broad Discretion to Exercise Significant Power

46.     SEC ALJs enjoy broad discretion to exercise significant authority with respect to administrative proceedings.  Under the SEC Rules of Practice, an SEC ALJ – referred to in the Rules of Practice as the "hearing officer" – is empowered, within his or her discretion, to perform the following, among other things:

a. Take testimony. RoP 111.

b. Conduct trials. *Id.*

c. Rule on admissibility of evidence. RoP 320.

d. Order production of evidence. RoP 230(a)(2), 232.

e. Issue orders, including show-cause orders. *See, e.g.,* 17 CFR 201.141(b); *In the Matter of China Everhealth Corp.*, Admin. Proc. Rel. No. 1639, 2014 SEC LEXIS 2601 (July 22, 2014).

f. Rule on requests and motions, including pre-trial motions for summary disposition. *See, e.g.,* RoP 250(b).

g. Grant extensions of time. RoP 161.

h. Dismiss for failure to meet deadlines. RoP 155(a).

i. Reconsider their own or other SEC ALJs' decisions. RoP 111(h).

j. Reopen any hearing prior to the filing of a decision. RoP 111(j).

k. Amend the SEC's OIP. RoP 200(d)(2).

l. Impose sanctions on parties for contemptuous conduct. RoP 180(a).

m. Reject filings that do not comply with the SEC's Rules of Practice. RoP 180(b).

n. Dismiss the case, decide a particular matter against a party, or prohibit introduction of evidence when a person fails to make a required filing or cure a deficient filing. RoP 180(c).

o. Enter orders of default, and rule on motions to set aside default. RoP 155.

p. Consolidate proceedings. RoP 201(a).

q. Grant law enforcement agencies of the federal or state government leave to participate. RoP 210(c)(3).

r. Regulate appearance of amici. RoP 210(d).

s. Require amended answers to amended OIPs. RoP 220(b).

t. Direct that answers to OIPs need not specifically admit or deny, or claim insufficient information to respond to, each allegation in the OIP. RoP 220(c).

u.   Require the SEC to file a more definite statement of specified matters of fact or law to be considered or determined.  RoP 220(d).

v.   Grant or deny leave to amend an answer.  RoP 220(e).

w.   Direct the parties to meet for prehearing conferences, and preside over such conferences as the ALJ "deems appropriate."  RoP 221(b).

x.   Order any party to furnish prehearing submissions.  RoP 222(a).

y.   Issue subpoenas.  RoP 232.

z.   Rule on applications to quash or modify subpoenas.  RoP 232(e).

aa.   Order depositions, and act as the "deposition officer."  RoP 233, 234.

bb.   Regulate the SEC's use of investigatory subpoenas after the institution of proceedings.  RoP 230(g).

cc.   Modify the Rules of Practice with regard to the SEC's document production obligations.  RoP 230(a)(1).

dd.   Require the SEC to produce documents it has withheld.  RoP 230(c).

ee.   Disqualify himself or herself from considering a particular matter.  RoP 112(a).

ff.   Order that scandalous or impertinent matter be stricken from any brief or pleading.  RoP 152(f).

gg.   Order that hearings be stayed while a motion is pending.  RoP 154(a).

hh.   Stay proceedings pending Commission consideration of offers of settlement.  RoP 161(c)(2).

ii.   Modify the Rules of Practice as to participation of parties and amici.  RoP 210(f).

jj.   Allow the use of prior sworn statements for any reason, and limit or expand the parties' intended use of the same.  RoP 235(a), (a)(5).

kk.   Express views on offers of settlement.  RoP 240(c)(2).

ll.   Grant or deny leave to move for summary disposition.  RoP 250(a).

mm.   Order that hearings not be recorded or transcribed.  RoP 302(a).

nn.   Grant or deny the parties' proposed corrections to hearing transcript.  RoP 302(c).

oo.    Issue protective orders governing confidentiality of documents.  RoP 322.

pp.    Take "official notice" of facts not appearing in the record.  RoP 323.

qq.    Regulate the scope of cross-examination.  RoP 326.

rr.    Certify issues for interlocutory review, and determine whether proceedings should be stayed during pendency of review.  RoP 400(c), (d).

### The SEC ALJ's Decision

47.    At the close of an administrative proceeding, the SEC ALJ issues his or her decision, referred to in the Rules of Practice as the "initial decision."  RoP 360.  The initial decision states the time period within which a petition for Commission review of the initial decision may be filed.  The SEC ALJ exercises his or her discretion to decide that time period.

48.    The initial decision becomes the final decision of the SEC after the period to petition for review expires, unless the Commission takes the SEC ALJ's decision up for review. With certain exceptions that do not apply to this matter, the Commission is not required to take up any SEC ALJ's decision for review.

49.    As applied to this matter, Commission review is entirely discretionary. The Commission can deny a petition for review for any reason, after considering whether the petition for review makes a reasonable showing that (i) the decision embodies a clearly erroneous finding of material fact, an erroneous conclusion of law, or an exercise of discretion or decision of law or policy that is "important"; or (ii) a prejudicial error was committed during the proceeding.

50.    If no party requests review, and if the Commission does not undertake review on its own initiative, no Commission review occurs.  Instead, the Commission enters an order that the decision has become final, and "the action of [the] administrative law judge . . . shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission."  15

U.S.C. § 78d-1(c).  The order of finality states the date on which sanctions imposed by the SEC ALJ, if any, will become effective.  RoP 360(d)(2).

51.     Nothing in the rules or statutes prevents the Commission from making the ALJ's sanction effective before the respondent has had an opportunity to appeal the Commission's order, and in fact the Commission routinely makes sanctions effective immediately.  *See, e.g., In the Matter of Mark Andrew Singer*, Exchange Act Rel. No. 72996, 2014 SEC LEXIS 3139 (Sept. 4, 2014).

**The Appointment Process for SEC ALJs Violates**
**<u>The Appointments Clause of Article II</u>**

52.     The ALJ position is established by statute, which provides that each agency "shall" appoint as many ALJs as necessary for the agency's administrative proceedings.  5 U.S.C. § 3105.

53.     In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 130 S. Ct. 3138 (2010), the Supreme Court ruled that for purposes of the Appointments Clause, the Commission is a "Department" of the United States, and that the Commissioners collectively function as the "Head" of the Department with authority to appoint such "inferior Officers" as Congress authorizes through legislation.

54.     SEC ALJs are "officers" of the United States due, among other things, to the significant authority they exercise; the broad discretion they are afforded; their career appointments; that they are appointed by the heads of an Executive Department; the statutory and regulatory requirements governing their duties, appointment, and salary; the statutory authority creating their position; and their power, in certain instances, to issue the final decision of the agency.

55.     The Commissioners have not appointed ALJs, as constitutionally required.  SEC ALJs are hired by the SEC's Office of Administrative Law Judges, with input from the Chief Administrative Law Judge, human resource functions and the Office of Personnel Management. In some cases, ALJs have been simply transferred to the Commission from FERC and other federal agencies.  The Commissioners themselves are not involved in the appointment of ALJs.

56.     Improper appointments are a structural defect in the ALJ program.  The Commissioners are sworn to faithfully carry out the executive authority entrusted to them, including the power to appoint key officers.  Governing regulations provide:

> The members of this Commission have undertaken in their oaths of office to support the Federal Constitution.  Insofar as the enactments of the Congress impose executive duties upon the members, they must faithfully execute the laws which they are charged with administering.

17 C.F.R. § 200.54.

57.     Commissioners have the power and responsibility to ensure that the office of ALJ – an office wielding significant authority – is filled by an individual whom Commissioners collectively have evaluated and deemed appropriate to this critical function.  Without the scrutiny and approval inherent in collective appointment by the Commissioners, ALJs lack the imprimatur of the Department Head necessary to carry out such a sensitive and powerful role.  It is one thing for Commissioners appointed by the President and confirmed by the Senate to use their collective judgment to appoint individuals who preside over important administrative proceedings.  It is quite different, and constitutionally infirm, to fill that crucial presiding role through bureaucratic means far removed from our elected President and Congress.

58.     The Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, establishes ALJs' powers with respect to adjudication.  5 U.S.C. §§ 556, 557.  The securities laws empower

the SEC to delegate certain functions to SEC ALJs, including many of those listed above. 15 U.S.C. §78d-1.

59. SEC regulation establishes the "Office of Administrative Law Judges," and outlines their authority. *See, e.g.*, 17 C.F.R. § 200.14; 17 C.F.R. § 200.30-9; 17 C.F.R. § 201.111. Those regulations provide that SEC ALJs' authority with respect to adjudications is to be as broad as the APA allows. 17 C.F.R. § 201.111 ("No provision of these Rules of Practice shall be construed to limit the powers of the hearing officer provided by the Administrative Procedure Act, 5 U.S.C. 556, 557.").

60. The salary of SEC ALJs is specified by statute. There are eight levels of basic pay for ALJs, the lowest of which may not be less than 65% of the rate of basic pay for level IV of the Executive Schedule, and the highest of which may not be more than the rate of basic pay for level IV of the Executive Schedule. 5 U.S.C. § 5372. (The Executive Schedule is a system of salaries given to the highest-ranked appointed positions in the executive branch of the U.S. government. 5 U.S.C. § 5311.)

61. The means of appointing an ALJ is specified by statute. Appointments are made by agencies based on need. 5 U.S.C. § 3105. By regulation, ALJs may be appointed only from a list of eligible candidates provided by the Office of Personnel Management ("OPM") or with prior approval of OPM. 5 C.F.R. § 930.204. OPM selects eligible candidates based on a competitive exam, which OPM develops and administers.

62. All ALJs receive career appointments and are exempt from probationary periods that apply to certain other government employees. 5 C.F.R. § 930.204(a). They do not serve time-limited terms.

**The SEC ALJs' Removal Scheme Violates Article II's**
**Vesting of Executive Power in the President**

63.     SEC ALJs are removable from their position by the SEC "only" for "good cause," which must be "established and determined" by the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7521(a).

64.     This removal procedure involves two or more levels of tenure protection.

65.     First, as noted, SEC ALJs are protected by statute from removal absent "good cause." 5 U.S.C. § 7521(a).

66.     Second, the SEC Commissioners, who exercise the power of removal, are themselves protected by tenure.  They may not be removed by the President from their position except for "inefficiency, neglect of duty, or malfeasance in office."  *See, e.g.*, *Free Enterprise*, 130 S. Ct. at 3148; *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004).

67.     Third, members of the MSPB, who determine whether sufficient "good cause" exists to remove an SEC ALJ, are also protected by tenure.  They are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

68.     As executive officers, SEC ALJs may not be protected by more than one layer of tenure.

69.     Article II of the U.S. Constitution vests "[t]he executive Power . . . in a President of the United States of America," who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.*, § 3.  In light of "[t]he impossibility that one man should be able to perform all the great business of the State," the Constitution provides for executive officers to "assist the supreme Magistrate in discharging the duties of his trust."  30 Writings of George Washington 334 (J. Fitzpatrick ed. 1939); *see also Free Enterprise*, 561 U.S. 477, 130 S. Ct. at 3146.

70.     Article II's vesting authority requires that the principal and inferior officers of the Executive Branch be answerable to the President and not be separated from the President by attenuated chains of accountability.  Specifically, as the Supreme Court held in *Free Enterprise*, Article II requires that executive officers, who exercise significant executive power, not be protected from being removed by their superiors at will, when those superiors are themselves protected from being removed by the President at will.

71.     The SEC ALJs' removal scheme is contrary to this constitutional requirement because SEC ALJs are inferior officers for the purposes of Article II, Section 2 of the U.S. Constitution, and because:

    a.   SEC ALJs are protected from removal by a statutory "good cause" standard; and

    b.   The SEC Commissioners who are empowered to seek removal of SEC ALJs – within the constraints of the "good cause" standard – are themselves protected from removal by an "inefficiency, neglect of duty, or malfeasance in office" standard; and

    c.   The MSPB members who are empowered to effectuate the removal decision – again limited by a "good cause" standard – are themselves protected from removal by an "inefficiency, neglect of duty, or malfeasance in office" standard.

72.     Under this attenuated removal scheme, "the President cannot remove an officer who enjoys more than one level of good-cause protection, even if the President determines that the officer is neglecting his duties or discharging them improperly.  That judgment is instead committed to another officer, who may or may not agree with the President's determination, and whom the President cannot remove simply because that officer disagrees with him. This contravenes the President's 'constitutional obligation to ensure the faithful execution of the laws.'" *Free Enterprise*, 130 S. Ct. at 3147 (quoting *Morrison v. Olson*, 487 U.S. 654, 693 (1988)).

73.    Because the President cannot oversee SEC ALJs in accordance with Article II, SEC administrative proceedings violate the Constitution.

### The SEC's Chosen Course Will Cause Plaintiffs Severe and Irreparable Harm

74.    Without injunctive relief from this Court, Plaintiffs will be required to submit to an unconstitutional proceeding.   This violation of a constitutional right, standing alone, constitutes an irreparable injury.   The lack of traditional procedural safeguards in SEC administrative proceedings further exacerbates that harm.

75.    Allowing the SEC to pursue an administrative proceeding while the instant complaint is pending would require the expenditure of substantial legal fees defending against an unconstitutional action.   Moreover, plaintiffs cannot assert counterclaims or seek declaratory relief in an administrative proceeding, foreclosing any possibility of review until an appeal to a federal circuit court of appeals.   The burdens incurred during an administrative proceeding would be for naught, because such administrative proceeding is unconstitutional and the SEC likely would try to reprise its case in a lawful setting, such as federal district court.   However, forcing Plaintiffs to litigate twice would compound costs, lost time, and reputational risk.

76.    Furthermore, if Plaintiffs were to lose in an administrative proceeding, the damage could be severe and irreversible, well before Plaintiffs could obtain meaningful judicial review of the Article II claim.

77.    This severe harm, which threatens to damage Patriarch's businesses, their employees, and the investments of numerous noteholders, is irreparable.   The availability of an appeal after an administrative proceeding to a federal circuit court of appeals cannot avoid it, because the administratively-imposed sanction already may take effect – and the damage

therefore already substantially and harmfully done – by the time the appellate court made a ruling.

78.     Likewise, the harm cannot be remedied after the fact by money damages. Various immunity doctrines substantially constrain Plaintiffs' ability to seek damages from the SEC. Furthermore, even if damages were procedurally available, the reputational harm to Ms. Tilton and Patriarch – possibly permanent and devastating to Ms. Tilton's business – should the SEC impose administrative sanctions would be impossible to monetize. And because Ms. Tilton's business model involves debt and equity positions in private distressed companies, which positions are illiquid, accurately calculating the value of the lost ownership opportunities that would result from an unfavorable ruling in an unconstitutional administrative proceeding would be well-nigh impossible.

79.     By contrast, the SEC will suffer no harm from a pause in an administrative proceeding against Plaintiffs pending final resolution of this important constitutional issue. The Enforcement Division spent more than five years investigating this matter. Any claim of harm by the SEC would be particularly fanciful because the SEC maintains the option of bringing its enforcement action against Ms. Tilton and Patriarch in federal court, as it routinely does with other investment advisers. Moreover, investors are currently relying on Ms. Tilton and Patriarch to actively manage their substantial investments, and no investors have sought to remove them from these critical roles. Therefore, no investor would be adversely affected by injunctive relief from this Court.

## COUNT ONE
## APPLICATION FOR INJUNCTIVE RELIEF

80.    Plaintiffs repeat and re-allege paragraphs 1 - 79 as if set forth in full.

81.    Plaintiffs' constitutional rights will be irreparably harmed if a permanent injunction (and, if necessary, a preliminary injunction and temporary restraining order) are not issued against the SEC's administrative proceeding. Plaintiffs have a substantial likelihood of success on the merits of their claim. Plaintiffs will be irreparably injured without injunctive relief, as described above, and the harm to Plaintiffs, absent injunctive relief, far outweighs any harm to the SEC if they are granted. Finally, the grant of an injunction will serve the public interest in the protection of parties' constitutional rights.

## COUNT TWO
## DECLARATORY JUDGMENT

82.    Plaintiffs repeat and re-allege paragraphs 1 - 79 as if set forth in full.

83.    Plaintiffs request a declaratory judgment that (i) the appointments of SEC ALJs have been unconstitutional, rendering proceeding before those ALJs unlawful; and (ii) the statutory and regulatory provisions providing for the position and tenure protections of SEC ALJs are unconstitutional.

## Jury Demand

84.    Plaintiffs hereby demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

A.      An order and judgment declaring unconstitutional the statutory and regulatory provisions and practices for selecting and designating SEC ALJs.

B.      An order and judgment declaring unconstitutional the statutory and regulatory provisions providing for the position of SEC ALJ and the tenure protections for that position.

C.      An order and judgment enjoining the Commission from carrying out an administrative proceeding against Plaintiffs.

D.      Such other and further relief as this Court may deem just and proper, including reasonable attorneys' fees and the costs of this action.

Dated: April 1, 2015          By:
      New York, NY

David M. Zornow
David.Zornow@Skadden.com
Christopher J. Gunther
Christopher.Guther@Skadden.com
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
(212) 735-3000

Susan E. Brune
sbrune@bruneandrichard.com
MaryAnn Sung
msung@bruneandrichard.com
BRUNE & RICHARD LLP
One Battery Park Plaza
New York, NY 10004
(212) 668-1900