UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                   :

LYNN TILTON; PATRIARCH PARTNERS,      :
LLC; PATRIARCH PARTNERS VIII, LLC;     :
PATRIARCH PARTNERS XIV, LLC; and     :
PATRIARCH PARTNERS XV, LLC,        :      No. 15 Civ. 02472 (RA)
                                   :

                  Plaintiffs,    :

            v.               :

SECURITIES AND EXCHANGE         :
COMMISSION,                     :

                Defendant.    :

                                   :
------------------------------------------------------------X


## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
## OF THEIR MOTION FOR A PRELIMINARY INJUNCTION

David M. Zornow
Christopher J. Gunther
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

Susan E. Brune
MaryAnn Sung
BRUNE & RICHARD LLP
One Battery Park Plaza
New York, NY 10004

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 3

    A.    Background ............................................................................... 3

    B.    The SEC Investigation ............................................................. 4

    C.    The Chosen Forum ................................................................... 5

ARGUMENT .................................................................................................. 7

    I.    THIS COURT HAS JURISDICTION OVER PATRIARCH'S
        CONSTITUTIONAL CHALLENGES. .............................................. 7

        A.    Subject Matter Jurisdiction Is Proper Under 28 U.S.C. § 1331 ................ 7
        B.    The SEC's Review Scheme Does Not Deprive This Court of
            Jurisdiction. ............................................................................ 8
            1.    Patriarch's Facial Constitutional Challenges Are Wholly
                    Collateral to the Review Provisions of the Securities Laws ........... 9
            2.    Patriarch's Claims Are Beyond the SEC's Expertise .................... 10
            3.    Patriarch Cannot Otherwise Obtain Meaningful Review ............. 11

    II.    PATRIARCH IS ENTITLED TO A PRELIMINARY INJUNCTION TO
        ENJOIN THE SEC'S ADMINISTRATIVE PROCEEDING AGAINST IT ........ 13

        A.    Patriarch Is Likely To Succeed on the Merits. ............................. 13
            1.    The Broad Powers Exercised by SEC ALJs. .............................. 14
            2.    SEC ALJs are Indistinguishable from Other Judges Who
                Are Deemed "Officers" ........................................................ 15
            3.    The Finality of SEC ALJ Decisions ........................................ 17
        B.    Patriarch Will Be Irreparably Harmed If the Administrative
            Proceeding Is Not Enjoined. .................................................... 19
        C.    The Balance of Equities and Public Interest Weigh Strongly in
            Favor of Granting a Preliminary Injunction. ............................. 21

    CONCLUSION ....................................................................................... 22

# TABLE OF AUTHORITIES

PAGE

## CASES

Adkins v. Rumsfeld,
    389 F. Supp. 2d 579 (D. Del. 2005) ...................................................... 10

Alexandre v. New York City Taxi & Limousine Comm'n,
    2007 WL 2826952 (S.D.N.Y. Sept. 28, 2007) ...................................... 19

Altman v. SEC,
    768 F. Supp. 2d 554 (S.D.N.Y. 2001), aff'd, 687 F.3d 44 (2d Cir. 2012) ...................... 10

Arjent LLC v. SEC,
    7 F. Supp. 3d 378 (S.D.N.Y. 2014) ...................................................... 3

Bay Shore Union Free School District v. Kain,
    485 F.3d 730 (2d Cir. 2007) .................................................................. 7

Bebo v. SEC,
    No. 15-C-3, 2015 WL 905349 (E.D. Wis. Mar. 3, 2015) ..................... 14

Buckley v. Valeo,
    424 U.S. 1(1976) ................................................................................ 14

Califano v. Sanders,
    430 U.S. 99 (1977) .............................................................................. 7

Chau v. SEC,
    No. 14-cv-1903, 2014 WL 6984236 (S.D.N.Y. Dec. 11, 2014) ................... 3, 9

Continental Air Lines, Inc. v. Department of Transportation,
    843 F.2d 1444 (D.C. Cir. 1988) .......................................................... 12

Disabled American Veterans v. Department of Veterans Affairs,
    962 F.2d 136 (2d Cir. 1992) .................................................................. 9

Edmond v. United States,
    520 U.S. 651 (1997) ........................................................................... 16

Elgin v. Dept. of Treasury,
    132 S.Ct. 2126 (2012) ................................................................... 10, 11

Free Enterprise Fund v. Public Co. Accounting Oversight Board,
    561 U.S. 477 (2010) ...............................................2, 8, 9, 10, 13, 19

Freytag v. Comm'r of Internal Revenue,
    501 U.S. 868 (1991) .....................................................1, 15, 16, 17

*Gupta v. SEC*,
    796 F. Supp. 2d 503 (S.D.N.Y. 2011) ................................................ 3, 11, 12

*Johnson v. Robinson*,
    415 U.S. 361 (1974) ................................................................................ 9

*Jolly v. Coughlin*,
    76 F.3d 458 (2d Cir. 1996) ..................................................................... 19

*Landry v. F.D.I.C.*,
    204 F.3d 1125 (D.C. Cir. 2000) ........................................................ 17, 18

*Le v. SEC*,
    542 F. Supp. 2d 1318 (N.D. Ga. 2008) ................................................... 21

*Lipkin v. SEC*,
    468 F. Supp. 2d 614 (S.D.N.Y. 2006) ..................................................... 21

*M.G. v. New York City Dep't of Educ.*,
    982 F. Supp. 2d 240 (S.D.N.Y. 2013) ..................................................... 13

*Matthews v. Eldridge*,
    424 U.S. 319 (1976) ................................................................................ 9

*McNary v. Haitian Refugee Center Inc.*,
    498 U.S. 479 (1991) ................................................................................ 9

*Metropolitan Taxicab Board of Trade v. City. of New York*,
    615 F.3d 152 (2d Cir. 2010) ..................................................................... 13

*Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*,
    838 F. Supp. 631 (D.D.C. 1993) ............................................................ 21

*Ryder v. United States*,
    515 U.S. 177 (1995) ............................................................................ 1, 17

*Samuels, Kramer & Co. v. Comm'r*,
    930 F.2d 975 (2d Cir. 1991) ................................................................... 18

*Weiss v. United States*,
    510 U.S. 163 (1994) ................................................................................ 16

*Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*,
    379 U.S. 411 (1965) ................................................................................ 10

# STATUTES

5 U.S.C. § 556 ...................................................................................... 15

5 U.S.C. § 556(c) ................................................................................. 15

5 U.S.C. § 556(c)(1) ............................................................................ 15

5 U.S.C. § 556(c)(4) ............................................................................ 15

5 U.S.C. § 557 ...................................................................................... 15

5 U.S.C. § 557(b) ................................................................................. 17

5 U.S.C. § 3105 .................................................................................... 15

5 U.S.C. § 5311 .................................................................................... 15

5 U.S.C. § 5372 .................................................................................... 15

15 U.S.C. § 78d-1 ................................................................................ 15

15 U.S.C. § 78d-1(c) ...................................................................... 17, 18

15 U.S.C. § 78y(a)(1) ....................................................................... 7, 9

15 U.S.C. § 80b-13(a) ....................................................................... 7, 9

15 U.S.C. §§ 80b-1-80-b-21 ................................................................ 7

28 U.S.C. § 1331 ................................................................................... 7

28 U.S.C. § 2201 ................................................................................... 7

8 C.F.R. § 1003.10 .............................................................................. 14

12 C.F.R. § 308.40 .............................................................................. 18

17 C.F.R. § 201.233 .............................................................................. 7

17 C.F.R. § 201.234 .............................................................................. 7

17 C.F.R. § 201.360(a)(2) .................................................................... 7

8 C.F.R. § 1003.101 ........................................................................... 14

# OTHER AUTHORITIES

Decision and Order, *Duka v. SEC*,
No. 15 Civ. 00357, (S.D.N.Y. Apr. 15, 2015), *ECR* 33 ................................... 2, 8, 13, 16

Initial Decision Release No. 507, *In re Bandimere*,
2013 SEC LEXIS 3142 (Oct. 8, 2013) ........................................................................ 11

Memorandum of Law, *Duka v. SEC*,
No. 15 Civ. 00357 at 11-12 (Jan. 28, 2015), *ECR* 13 ................................................ 14, 17

Office of Legal Counsel, *Officers of the United States Within the Meaning of the
Appointments Clause* (Apr. 16, 2007), *available at*
http://www.justice.gov/sites/default/files/olc/opinions/2007/04/31/appointmentscl
ausev10.pdf ................................................................................................................ 18

S.E.C., Rules of Practice § 360(d)(1), *available at*
https://www.sec.gov/about/rulesofpractice.shtml ................................................... 18, 20

U.S. Const., art. II, sec. 2, cl. 2 ..................................................................................... 13

## PRELIMINARY STATEMENT

Lynn Tilton, Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, and Patriarch Partners XV, LLC (collectively, "Patriarch" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for a preliminary injunction.

It is difficult to imagine a more basic defect in a hearing than a presiding judge without lawful authority. For this reason, the Supreme Court has held that where a judge serves in violation of the Appointments Clause of the U.S. Constitution, the error is "structural," the aggrieved party need not show prejudice in the manner the proceeding was otherwise conducted, and the error can be raised even by a party who consented to trial before that judge. See *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878-90 (1991); *see also Ryder v. United States*, 515 U.S. 177, 182-83 (1995). The role of judge — particularly one acting as finder of *both* fact *and* law — is too profoundly essential to be treated otherwise. Yet a proceeding violating such first principles is precisely what Plaintiffs face.

The genesis of this hearing is a split vote of the U.S. Securities and Exchange Commission ("SEC" or the "Commission"). The Enforcement Division of the SEC investigated Ms. Tilton and Patriarch for more than five years. On March 30, 2015, the Commission — three Commissioners in favor, and two disapproving — ordered a hearing before an SEC Administrative Law Judge ("SEC ALJ") to determine whether or not Plaintiffs committed alleged violations of the federal securities laws, and what remedies would be appropriate if violations were established. Last fiscal year, the Enforcement Division won 100% of its proceedings before SEC ALJs.

Such a hearing violates the Appointments Clause. The Supreme Court has held that the SEC Commissioners, themselves, collectively hold the power to appoint "inferior Officers"

within the meaning of the Clause. *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 512-13 (2010). Yet the Commissioners have <u>not</u> appointed the SEC ALJs, a defect specific to the SEC's ALJ program. The SEC therefore has adopted a fallback argument: that its own ALJs are merely employees and not "Officers" under the Appointments Clause. The SEC's argument fails easily because the Supreme Court and the Second Circuit have held repeatedly that judges with powers equivalent to SEC ALJs are "Officers." Indeed, Judge Berman recently recognized as much. *Duka v. SEC*, No. 15 Civ. 00357, slip op. at 16 (Doc. 33.) (RMB) (S.D.N.Y. Apr. 15, 2015). ("The Supreme Court's decision in *Freytag* . . . would appear to support the conclusion that SEC ALJs are also inferior officers.")

There is a second, independent defect in the SEC's ALJ program. In *Free Enterprise*, the Supreme Court also held that Officers of the United States — charged with executing the laws, a power vested by the Constitution solely in the President — may not be separated from Presidential supervision and removal by more than one layer of tenure protection. SEC ALJs enjoy at least two, and likely more, layers of tenure protection, and hearings before them therefore violate Article II and are unconstitutional.[1]

This Court has subject matter jurisdiction over Plaintiffs' claims that an SEC ALJ cannot preside over their day in court. *Id.* To be sure, the federal securities laws provide for review of final SEC orders in the United States Courts of Appeals. But, in *Duka*, Judge Berman correctly

---

[1]  In *Duka*, Judge Berman rejected the claim that the tenure protections for SEC ALJs violated Article II, a ruling without precedent. Even so, Judge Berman's logic — that SEC ALJs appear to be "Officers" within the meaning of Article II — fully supports Plaintiffs' Appointments Clause claim here. The Plaintiff in *Duka* made only the tenure argument and did not raise an Appointments Clause claim.

concluded that a facial challenge under Article II met the criteria for District Court jurisdiction over a pre-enforcement challenge to agency action. *Id.* at 10-15.[2]

Plaintiffs request a preliminary injunction because the inherently unconstitutional hearing before the SEC ALJ poses a significant risk of irreparable harm to Patriarch, the investors in their investment funds, and the underlying portfolio companies in which the funds invest. The balance of equities here is lopsided. The bare majority of three Commissioners who voted to order the ALJ hearing (two Commissioners opposed) will not be harmed at all because the SEC remains free to proceed with a complaint alleging identical securities law violations in District Court where the Commission has proceeded for decades. The SEC already has waited five years to bring proceedings in front of the ALJ, and would not be harmed if those proceedings were enjoined while the constitutionality of those proceedings was determined by this Court. This Court is Patriarch's only vehicle for meaningful judicial relief from a fundamentally unconstitutional hearing.

## STATEMENT OF FACTS

### A.      Background

Ms. Tilton is the founder and CEO of Patriarch Partners, LLC. Through her ownership of Patriarch and its affiliates, Ms. Tilton runs one of the largest woman-owned businesses in the United States, and she has restructured and rebuilt many companies, including well-known American brands such as Rand McNally, Stila Cosmetics, Dura Automotive and MD Helicopters. Patriarch's investment funds (collectively, the "Zohar Funds"), were structured as

---

[2]      This conclusion is supported by other decisions in this District upholding jurisdiction over constitutional challenges to SEC administrative proceedings. *E.g., Arjent LLC v. SEC*, 7 F. Supp. 3d 378, 384 (S.D.N.Y. 2014) (Castel, J., finding jurisdiction); *Gupta v. SEC*, 796 F. Supp. 2d 503, 510-14 (S.D.N.Y. 2011) (Rakoff, J., finding jurisdiction); *see also Chau v. SEC*, No. 14-CV-1903, 2014 WL 6984236, at *3 (S.D.N.Y. Dec. 11, 2014) (Kaplan, J., finding no jurisdiction over an as-applied challenge but recognizing other "pre-enforcement challenges are appropriate").

collateral loan obligations ("CLOs"), which raise cash by issuing debt to outside investors, known as noteholders. The noteholders are the most sophisticated of institutional investors. (Tilton Decl. ¶¶ 1, 4, 5.)

The Zohar Funds' principal investment strategy, unique among CLOs, was to acquire deeply distressed companies, make loans to them, and implement a long-term turnaround strategy to build value for the funds and their noteholders. As part of this strategy, the Zohar Funds have invested more than $2.5 billion raised from the Zohar Fund noteholders in the debt and equity of distressed companies. In addition to Patriarch's role as the collateral manager of the Zohar Funds, Ms. Tilton also guides the management of these portfolio companies in her role as Manager and/or CEO of the portfolio companies, and Patriarch's affiliates provide operational and management services and work day-to-day on company business. (Tilton Decl. ¶¶ 6-7.) Ms. Tilton's personal reputation and pivotal role at Patriarch are integral to dozens of Zohar Funds' portfolio companies, tens of thousands of American jobs, and more than two billion dollars of outstanding notes. (Tilton Decl. ¶ 9.)

## B.     The SEC Investigation and the Order Instituting Proceedings

The Staff of the Enforcement Division has investigated Ms. Tilton and Patriarch for a prolonged period, beginning with a document request issued on December 15, 2009, seeking information dating to 2000. The Staff subpoenaed and reviewed more than four years of Ms. Tilton's and certain other Patriarch employees' emails without regard to subject matter or search terms. Investigative activity continued into March 2015. (Gunther Decl. ¶ 3.)

On October 4, 2014, the Staff of the Enforcement Division issued a Wells Notice indicating that it had reached a preliminary conclusion that Ms. Tilton and Patriarch had violated various sections of the Investment Advisers Act. (Gunther Decl. ¶ 4.) The heart of the Staff's theory was — and is — a hotly-contested contractual interpretation of the Zohar Fund trust

4

indentures, which the Staff claims required greater disclosures to noteholders.[3]  Patriarch

provided a written Wells submission explaining why such charges would be inappropriate and

unwarranted, why the Staff's interpretation of the indentures was wrong, and why the evidence

plainly contradicts the Staff's theory.  (Gunther Decl. ¶ 4.)  In a supplemental submission,

Patriarch explained why any enforcement proceeding authorized by the Commission should be in

U.S. District Court, rather than an administrative proceeding, which would be constitutionally

infirm.  (Gunther Decl. ¶ 4.)

On March 30, 2015, the Commission — over the disapproval of two of the five

Commissioners — issued an Order Instituting Proceedings ("OIP"), commencing an

administrative proceeding against Plaintiffs and reciting the Division of Enforcement's

allegations of violations of the federal securities laws.  (Gunther Decl., Ex. 2).  The OIP ordered

that a public hearing for the taking of evidence be convened within 60 days before an SEC ALJ.

(Gunther Decl., Ex. 1.)  The OIP further ordered that the SEC ALJ issue an initial decision

within 300 days addressing whether the allegations in the OIP are true; what, if any, remedial

action is appropriate and in the public interest; and whether Plaintiffs should be subject to

injunctive relief and ordered to pay monetary penalties and disgorgement.  (Gunther Decl., Ex.

1.)

## C.  The Chosen Forum

The SEC's ALJ program has come under considerable scrutiny following the Dodd-Frank

Act's expansion of the Commission's statutory authority to impose monetary penalties through

administrative proceedings against unregistered parties.  For its first 75 years, the Commission

---

[3]  Such issues of contract interpretation, even if truly disputed between the parties to the contract, are not typically the subject of an SEC proceeding but rather are left to dispute resolution between sophisticated, well-financed parties.

could seek such monetary penalties only through an action in District Court. Ms. Tilton is not registered with the Commission as an investment advisor. Until early 2012, Patriarch was not required to be a registered investment advisor, and, accordingly, was not registered during two and one-half years of investigation and during the majority of conduct at issue. (Compl. ¶ 22.)

The SEC exercises discretion — guided by no statute, regulation, or established practice — to bring an enforcement action either in U.S. District Court or in internal SEC administrative proceedings. As one of the current Commissioners recently observed:

> Our enforcement program could . . . benefit from a look through the lens of fairness. In order to ensure that the Commission does not engage in arbitrary or capricious conduct in enforcement matters, the Commission should formulate and adhere to a consistent set of guidelines.
>
> . . . .
>
> To avoid the perception that the Commission is taking its tougher cases to its in-house judges, and to ensure that all are treated fairly and equally, the Commission should set out and implement guidelines for determining which cases are brought in administrative proceedings and which in federal courts.

Commissioner Michael S. Piwowar, *A Fair, Orderly, and Efficient SEC*, Remarks at the "SEC Speaks" Conference 2015.

Yet, to date, the Commission has announced no such guidelines. Instead, the Director of Enforcement has defended the push to administrative proceedings before Congress, in speeches and at panel discussions without articulating a principled set of standards for evaluating or recommending the administrative forum.

The Commissioners have not appointed SEC ALJs, as constitutionally required. SEC ALJs are hired by the SEC's Office of Administrative Law Judges, with input from the Chief Administrative Law Judge, human resource functions and the Office of Personnel Management. In some cases, ALJs have been simply transferred to the Commission from other federal agencies. The Commissioners themselves are not involved in the appointment of ALJs.

The limited discovery available before an ALJ and the speedy hearing required by Commission rules contrast sharply with the type of wide-ranging and in-depth investigation carried out by the Staff for more than five years in this particular case. The discovery available in administrative proceedings is far more limited than in U.S. District Court, with depositions generally not permitted. 17 CFR § 201.233, 17 CFR § 201.234. Under the most extended schedule permitted by Commission rules, an ALJ must issue an initial decision within 300 days of the OIP. 17 CFR § 201.360(a)(2). To allow time for drafting an initial decision in that time frame, SEC rules contemplate that the hearing will take place four months after the OIP.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION OVER PATRIARCH'S CONSTITUTIONAL CHALLENGES.

#### A. Subject Matter Jurisdiction Is Proper Under 28 U.S.C. § 1331.

Federal district courts have original jurisdiction over all civil actions arising under the Constitution or federal laws. 28 U.S.C. § 1331. A case arises under the Constitution or federal law within the meaning of this statute if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Subject only to applicable preclusion-of-review statutes, section 1331 confers jurisdiction on district courts to review agency action. *See Califano v. Sanders*, 430 U.S. 99, 104-07 (1977). With few exceptions, in cases of actual controversy within its jurisdiction, a federal district court may "declare the rights and other legal relations of any interested party" upon the filing of an appropriate motion. 28 U.S.C. § 2201.

**B.     The SEC's Review Scheme Does Not Deprive This Court of Jurisdiction.**

The Securities Exchange Act of 1934, 15 U.S.C. §78a et seq. (the "Exchange Act"), and the Investment Advisers Act of 1940, 15 U.S.C. §§ 80b-1 – 80-b-21 (the "Investment Advisers Act"), provide that persons or parties aggrieved by a final SEC order may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business or for the District of Columbia Circuit. 15 U.S.C. § 78y(a)(1); 15 U.S.C. § 80b-13(a). However, "[p]rovisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernable' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enterprise*, 561 U.S. at 489 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)).

In *Free Enterprise*, the Court considered an action seeking declaratory and injunctive relief against the Public Company Accounting Oversight Board ("PCAOB"). The PCAOB was created pursuant to the Sarbanes-Oxley Act of 2002, which placed the Board under the oversight of the SEC. *Id.* The Court held that § 78y did not deprive the district court of subject matter jurisdiction. *Id.* at 489-90. Rather, it is presumed that Congress did *not* intend to limit jurisdiction to the SEC's administrative scheme over challenges to SEC-related actions where, as here, (1) the suit is "wholly collateral to a statute's review provisions"; (2) the claims are "outside the agency's expertise"; and (3) "a finding of preclusion could foreclose all meaningful judicial review." *Id.* (quoting *Thunder Basin*, 510 U.S. at 212-13).

In *Duka*, the court found all three criteria met, and thus exercised jurisdiction over plaintiff's Article II challenge to the tenure protection of SEC ALJs. Order and Decision at 10-15, *Duka*, No. 15 Civ. 00357 (S.D.N.Y. Apr. 15, 2015). Jurisdiction likewise exists for Plaintiffs' Article II challenge here.

8

*1.*     *Patriarch's Facial Constitutional Challenges Are Wholly Collateral to the*
        *Review Provisions of the Securities Laws*

As Judge Kaplan has explained:

> There is an important distinction between a claim that an administrative scheme is
> unconstitutional in all instances—a facial challenge—and a claim that it violates a
> particular plaintiff's rights in light of the facts of a specific case—an as-applied
> challenge. As between the two, courts are more likely to sustain pre-enforcement
> jurisdiction over 'broad facial and systematic challenges,' such as the claim at
> issue in *Free Enterprise Fund.*

*Chau*, 2014 WL 6984236 at *6.

Patriarch's challenges to the constitutionality of SEC ALJs' appointment and tenure are

"facial," rather than "as-applied" challenges, and are thus wholly collateral to the administrative

proceeding. Patriarch's claims do not depend upon the facts of this particular case — that is,

liability or lack of liability for the securities violations alleged. The Supreme Court long has

recognized that facial, structural constitutional challenges, like those asserted here, are collateral

to statutory review mechanisms.[4] This principle was reiterated in *Free Enterprise*, where the

Court deemed petitioners' constitutional challenge to the PCAOB's existence as collateral to any

SEC orders or rules from which review might be sought. 561 U.S. at 490.

Further, the SEC's review mechanism provides only for review of "an order of the

Commission." 15 U.S.C. § 78y(a)(1); 15 U.S.C. § 80b-13(a). By its terms, this mechanism does

not apply to Patriarch's constitutional challenges, which are necessarily collateral. *See, e.g.,*

*Disabled American Veterans v. Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992)

---

[4] *See, e.g., McNary v. Haitian Refugee Ctr. Inc.*, 498 U.S. 479, 492 (1991) (finding judicial review provisions for the
denial of individual Special Agricultural Work ("SAW") applications applied to "the process of direct review of
individual denial of SAW status," not "general collateral challenges to unconstitutional practices and policies
used by the agency"); *Matthews v. Eldridge*, 424 U.S. 319, 330 (1976) (district court has jurisdiction over
constitutional challenge to agency's administrative review proceeding because the challenge was "entirely
collateral to [plaintiff's] substantive claim of entitlement"); *Johnson v. Robinson*, 415 U.S. 361, 373 (1974)
(district court has jurisdiction, despite exclusive administrative review mechanism, over "constitutional
challenges to veterans' benefits legislation").

(holding that, despite the existence of a statutory review provision providing for exclusive agency review of "any decision of the Secretary[,]" "the district court had jurisdiction to consider [plaintiffs'] claim" because they "neither make a claim for benefits nor challenge the denial of such a claim, but rather challenge the constitutionality of a statutory classification drawn by Congress"). By contrast, challenges to Commission orders and decisions are not wholly collateral to the statutory review mechanism. *See, e.g., Altman v. SEC*, 768 F. Supp. 2d 554, 558, 560-561 (S.D.N.Y. 2011) (plaintiff's challenge to the SEC's "opinion upholding the [ALJ's] decision, but increasing [plaintiff's] sanction" was not wholly collateral when the statutory review mechanism provided for review of "a final order of the Commission" as distinguished from *Free Enterprise*, involving a "facial constitutional challenge" that "did not ask the district court to review 'a final Commission order or rule,' [which is] the realm of [the statutory review mechanism]; [but rather] asked the court . . . to review the constitutionality of Congressional action"), *aff'd*, 687 F.3d 44 (2d Cir. 2012); *Elgin v. Dept. of Treasury*, 132 S.Ct. 2126, 2139-40 (2012) (federal employee's challenge was not wholly collateral to his termination just because he attacked the constitutionality of the statute disqualifying him from federal employment).

### 2. *Patriarch's Claims Are Beyond the SEC's Expertise*

The Supreme Court in *Free Enterprise* plainly held that petitioners' constitutional arguments, identical to those here — specifically, that the PCAOB violated the Appointments Clause and the restrictions on tenure protection in Article II — were "outside the Commission's competence and expertise." 561 U.S. at 491. That is because administrative review is "designed to permit agency expertise to be brought to bear on particular problems," such as when technical or industry expertise is required, *Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 420 (1965), but constitutional questions, by contrast, "are particularly suited to the expertise of the judiciary." *Adkins v. Rumsfeld*, 389 F. Supp. 2d 579, 588 (D. Del.

10

2005).  Appointments Clause challenges and Article II challenges are not peculiarly within the

SEC's competence or expertise (namely, the federal securities laws).  Such constitutional

challenges are more commonly (if not exclusively) reviewed by District Courts than by the SEC.

Unlike in *Elgin, supra* at 10, where the Supreme Court envisioned the need of the Merit System

Protection Board to answer non-constitutional threshold questions in an effort to resolve the

plaintiff's challenge to dismissal from federal employment, here no non-constitutional threshold

issue exists.  The decisive — indeed, the only — question is whether SEC ALJs qualify as

"inferior Officers" within the meaning of Article II; this constitutional question is beyond the

SEC's expertise.

### 3.  *Patriarch Cannot Otherwise Obtain Meaningful Review*

If this Court determines that it lacks jurisdiction to hear Patriarch's constitutional claims

and requires it to follow the review procedure set out by statute, Patriarch will be deprived of all

meaningful judicial review and will be forced to endure the very proceeding that it alleges is

inherently unconstitutional.

Patriarch will be unable to meaningfully litigate its constitutional claims before the SEC.

Patriarch's constitutional challenges cannot be raised effectively in an administrative proceeding

because they are not a defense to any particular Commission allegation or action.  Patriarch will

also be unable to raise these challenges as counterclaims during the administrative proceeding, as

the SEC's Rules of Practice do not permit such actions.  *See Gupta*, 796 F. Supp. 2d at 513.  Nor

do the Rules allow the kind of discovery of the SEC personnel necessary to elicit admissible

evidence of such claims, such as interrogatories and demands for admissions.  Indeed, one SEC

ALJ has expressed "grave doubt" that an ALJ even has the authority to consider a constitutional

claim. *See In re Bandimere*, Initial Decision Release No. 507, 2013 SEC LEXIS 3142, at *215-17 (Oct. 8, 2013).[5]

The SEC ALJ also "would be inherently conflicted in assessing" a challenge to the ALJ's own judicial position and tenure protections. *See Gupta*, 796 F. Supp. 2d at 513-14 (plaintiff "would be forced to endure the very proceeding he alleges is the device by which unequal treatment is being visited upon him."); *see Continental Air Lines, Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1456 (D.C. Cir. 1988) (citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (holding that an agency "is powerless to determine the constitutionality of [its enabling] statute itself.").

Further, any appeal from the SEC ALJ's decision would be reviewed by the Commission: the very body which already has determined that a hearing before an SEC ALJ was warranted, albeit by a bare majority. It would be inherently difficult for the Commission to consider the claims here in a neutral way given its responsibility for its own administrative proceedings, its allowance of improper ALJ designations, and the fact that it sent this complex, long-standing matter to an ALJ for resolution.

Additionally, as discussed *infra*, Patriarch will have suffered significant and irreparable injury by the time of any eventual review by a Court of Appeals. Given these realities, Patriarch could essentially be dealt a death blow, but only then obtain an initial review of Plaintiffs' constitutional claims — all without the benefit of factual development or relevant agency record.

---

[5] This SEC ALJ reasoned as follows: "Bandimere asserts that the present proceedings denied him equal protection. I have grave doubts whether such a claim is justiciable in this forum. I have found no case where the Commission or a Commission Administrative Law Judge has found merit in an equal protection claim, nor has Bandimere identified any. In Commission administrative proceedings, there is apparently no provision for counterclaims for dismissal of an OIP on procedural grounds. It would seem that any relief on equal protection grounds must be predicated on a finding that the present proceeding should never have been instituted . . . . Such a finding presupposes that I have authority to second-guess the Commission's decision to issue the OIP. I doubt that my authority extends that far." *Id.* (citations omitted).

## II. PATRIARCH IS ENTITLED TO A PRELIMINARY INJUNCTION TO ENJOIN THE SEC'S ADMINISTRATIVE PROCEEDING AGAINST IT.

A preliminary injunction is warranted if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *See Metro. Taxicab Bd. of Trade v. City. of New York*, 615 F.3d 152, 156 (2d Cir. 2010); *M.G. v. New York City Dep't of Educ.*, 982 F. Supp. 2d 240, 245 (S.D.N.Y. 2013). As demonstrated below, Patriarch has amply satisfied each of these elements and is therefore entitled to injunctive relief.

### A. Patriarch Is Likely To Succeed on the Merits.

The Appointments Clause provides as follows:

> [The President] shall nominate, and, by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const., art. II, sec. 2, cl. 2 (emphasis added).

In *Free Enterprise*, the Supreme Court ruled that for purposes of the Appointments Clause, the Commission is a "Department" of the United States, and that the Commissioners collectively function as the "Head" of the Department with authority to appoint "inferior Officers." 561 U.S. at 511-13. *Free Enterprise* also held that, under Article II of the Constitution, such officers may be insulated from Presidential removal by no more than one layer of tenure protection.[6]

---

[6] In *Duka, supra*, Judge Berman held that the tenure protections of SEC ALJs did not violate Article II because they carry out "solely adjudicatory functions, and are not engaged in policymaking or enforcement." *SEC v. Duka*, No. 15 Civ. 00357 (Doc. 33), at 20 (April 15, 2015). This view is wrong, and would create an unprecedented category of Article II judicial officers unsupervised by the Executive Branch of government.

The Commission's use of SEC ALJs fails both requirements.  It bears emphasis that these defects are specific to SEC ALJs.  For example, Immigration Court administrative judges are appointed by the Attorney General (the "Head" of the Department of Justice, for Article II purposes), as required by the Appointments Clause.  *See* 8 C.F.R. § 1003.10.

It also bears emphasis that in other cases challenging the status of SEC ALJs under Article II, the SEC has never claimed the Commissioners appoint ALJs.  Rather, the Commission has argued only that SEC ALJs are mere employees rather than "inferior Officers" subject to Art. II appointment and tenure protection rules.  *SEC v. Duka*, No. 15 Civ. 00357 (Doc. 13), at 11-12 (Jan. 28, 2015).  Thus, the decisive constitutional question in this case is whether SEC ALJs are "inferior Officers" under Article II.  As described below, Patriarch is likely to succeed on this decisive question.[7]

### 1.    *The Broad Powers Exercised by SEC ALJs*

In determining whether administrative officers qualify as "inferior Officers" subject to the restrictions imposed by Article II, courts have repeatedly quoted the general rule formulated by the Supreme Court in *Buckley v. Valeo*: that "[a]ny appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States' . . . ."  424 U.S. 1, 126 (1976).

The Commission's own description of the role played by its ALJs in administrative proceedings easily satisfies this test, illustrating the broad range and scope of responsibilities of an SEC ALJ:

> <u>Administrative Law Judges are independent judicial officers</u> who in most
> cases  conduct  hearings  and  rule  on  allegations  of  securities  law  violations

---

[7]    Judge Rudolph Randa of the Eastern District of Wisconsin dismissed a complaint raising an Article II challenge (among other constitutional challenges) for lack of jurisdiction, despite "find[ing] that [Plaintiff]'s claims are compelling and meritorious."  *Bebo v. SEC*, No. 15-C-3, 2015 WL 905349, at *2 (E.D. Wis. Mar. 3, 2015).

initiated by the Commission's Division of Enforcement. <u>They conduct public hearings</u> at locations throughout the United States <u>in a manner similar to non-jury trials in the federal district courts</u>. Among other actions, <u>they issue subpoenas, conduct prehearing conferences, issue defaults, and rule on motions and the admissibility of evidence</u>. At the conclusion of the public hearing, the parties submit proposed findings of fact and conclusions of law. The Administrative Law Judge prepares an Initial Decision that includes factual findings, legal conclusions, and, where appropriate, orders relief.

The Commission may seek a variety of sanctions through the administrative proceeding process. <u>An Administrative Law Judge may order sanctions that include suspending or revoking the registrations</u> of registered securities, as well as the registrations of brokers, dealers, investment companies, investment advisers, municipal securities dealers, municipal advisors, transfer agents, and nationally recognized statistical rating organizations. In addition, Commission <u>Administrative Law Judges can order disgorgement of ill-gotten gains, civil penalties, censures, and cease-and-desist orders</u> against these entities, as well as individuals, and can suspend or bar persons from association with these entities or from participating in an offering of a penny stock.

*See* S.E.C., Office of Administrative Law Judges, About the Office, *available at* www.sec.gov/alj (emphasis added).

   2.   *SEC ALJs are Indistinguishable from Other Judges Who Are Deemed "Officers"*

The SEC ALJs at issue in this case are indistinguishable from Officers described by the Supreme Court in *Freytag* when it determined that the special trial judges appointed by the Tax Court in that case qualified as inferior Officers. First, the Supreme Court in *Freytag* found that "the office of special trial judge is established by law. . . ." 501 U.S. at 881 (quotation marks and citations omitted). The position of an SEC ALJ is similarly established by law. *See* 5 U.S.C. § 556; 15 U.S.C. § 78d-1. Next, *Freytag* found that "the duties, salary, and means of appointment for [special trial judges] are specified by statute. 501 U.S. at 881 (citations omitted). Again, the same is true for SEC ALJs. *See* 5 U.S.C. §§ 556(c), 557 (setting forth responsibilities and powers of administrative law judges under the Administrative Procedure Act); 5 U.S.C. §§ 5311, 5372 (governing the salaries available to administrative law judges); 5 U.S.C. § 3105 (governing the appointment of administrative law judges by federal agencies).

Regarding the responsibilities performed by special trial judges, the Supreme Court found that they were authorized to take sworn testimony. 501 U.S. at 881. SEC ALJs can also take testimony. *See* 5 U.S.C. §§ 556(c)(1), (4). The Supreme Court found that the special trial judges could conduct trials. 501 U.S. at 881-82. The same is true of SEC ALJs, *see* 17 CFR § 201.111, and the Commission itself compares the hearings conducted by its ALJs to "non-jury trials in the federal district courts." *See supra* at 15. The Court in *Freytag* found that special trial judges were authorized to rule on the admissibility of evidence, 501 U.S. at 881-82, as are SEC ALJs. 17 CFR § 201.320. Finally, the Supreme Court found that special trial judges had "the power to enforce compliance with discovery orders." 501 U.S. at 881-82. Similarly, SEC ALJs have the authority to oversee discovery efforts, 17 CFR § 201.230; to issue, quash or modify subpoenas, 17 CFR § 201.232; and to oversee depositions, 17 CFR § 201.233. In short, ALJs are indistinguishable, for purposes of the Appointments Clause, from the judges found to be Officers in *Freytag*. *See SEC v. Duka*, No. 15 Civ. 00357 (Doc. 33), at 16 (April 15, 2015) ("The Supreme Court's decision in *Freytag* . . . would appear to support the conclusion that SEC ALJs are also inferior officers.")

In a trilogy of cases involving the constitutional status of military tribunals, the Supreme Court likewise has treated adjudicative officers as "Officers" for purposes of Article II, and the question addressed by the Court in such cases is frequently whether those officers are principal officers requiring direct Presidential appointment with the advice and consent of the Senate, or if they are inferior Officers subject to less stringent appointment restrictions. *See, e.g., Weiss v. United States*, 510 U.S. 163, 169 (1994) ("[t]he parties do not dispute that military judges, because of the authority and responsibilities they possess, act as "Officers" of the United States") (citing *Freytag*, 501 U.S. 868; *Buckley*, 424 U.S. at 126); *Edmond v. United States*, 520 U.S.

651, 661-63 (1997) (evaluating whether military judges qualify as "principal" or "inferior"

officers for purposes of Article II); *Ryder v. United States*, 515 U.S. 177, 180 (1995)

(acknowledging lower court's determination "that appellate military judges are inferior officers").

### 3. *The Finality of SEC ALJ Decisions*

The "significant authority" exercised by SEC ALJs over the matters assigned to them is

further augmented by the fact that they are able to issue findings and orders that become final,

without the requirement of any further review by the Commission itself. Under the relevant

provisions of the APA, an SEC ALJ is authorized to issue an "initial decision" that "becomes the

decision of [the Commission] without further proceedings" unless the Commission affirmatively

decides to review the decision in question and take action. 5 U.S.C. § 557(b). The SEC's Rules

of Practice also provide that the Commission is not required to review an initial decision issued

by an SEC ALJ, and that if the Commission declines to do so, the initial decision will be

promulgated by the Commission as a final decision. 17 CFR § 201.360(d)(1), 17 CFR §

201.410, 17 CFR § 201.411. Once this process is complete, the federal securities laws provide

that "the action of the . . . administrative law judge . . . shall, for all purposes, including appeal or

review therefore, be deemed the action of the Commission." 15 U.S.C. § 78d-1(c). Given the

practical realities of litigation in front of SEC ALJs — in which the majority of initial decisions

issued by SEC ALJs become final decisions without additional review by the Commission —

this structure grants additional plenary powers to SEC ALJs beyond those described above.

The SEC has argued in other cases that SEC ALJs are not inferior Officers subject to

Article II because the decisions they issue are "only preliminary" because they are subject to

further review by the Commission. *See, e.g., Duka*, No. 15 Civ. 00357 (Doc. 13), at 13. But this

argument ignores the fact that, as discussed, ALJ decisions can become final without further

review. In any event, the Supreme Court squarely rejected this same argument in *Freytag*: "The

Commissioner reasons that special trial judges may be deemed employees . . . because they lack authority to enter a final decision. *But this argument ignores the significance of the duties and discretion that special trial judges possess.*" 501 U.S. at 881 (emphasis added).

The SEC has in other cases sought to avoid *Freytag* by citing to *Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000), in which the D.C. Circuit held that FDIC ALJs were not officers subject to Article II. But the court in *Landry* distinguished *Freytag* based on two special factors peculiar to the FDIC regulatory regime, neither of which is present in this case. First, the court in *Landry* held that the "Tax Court [in *Freytag*] was required to defer to the STJ's factual and credibility findings unless they were clearly erroneous, . . . whereas here the FDIC Board makes its own factual findings" (i.e., conducts *de novo* review). 204 F.3d at 1133. Here, the Commission reviews factual findings for clear error, 17 CFR § 201.411(a)(2)(ii)(A), and thus this case falls squarely within *Freytag* and outside *Landry*. Second, the court in *Landry* found that "the STJs' power of final decision in certain classes of cases was critical to the [Supreme] Court's decision" in *Freytag*, and emphasized that the FDIC ALJ's could "never render the decision of the FDIC." 204 F.3d at 1134. But here the Commission's review of ALJs decisions is purely discretionary, and, absent the Commission's affirmative decision to review, are "deemed the action of the Commission." 15 U.S.C. § 78d-1(c); *cf.* 12 C.F.R. § 308.40 (contemplating mandatory, not discretionary, FDIC review). Thus, again, the facts here fall within *Freytag*, not *Landry*.

To the extent the Court reads *Landry* more broadly, it is inconsistent with *Freytag*, as D.C. Circuit Judge Randolph explained in his powerful concurrence, 204 F.3d at 1140-44 (Randolph, J., concurring). A broader reading of *Landry* is also inconsistent with binding precedent in this Circuit. *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 985-86 (2d Cir.

1991) (holding that the special trial judges are Article II officers without any reference to their ability to make final decisions). Finally, such a reading is inconsistent with guidance released by the Office of Legal Counsel for the Department of Justice, which has stated that "independent discretion is not a necessary attribute of delegated sovereign authority." Office of Legal Counsel, *Officers of the United States Within the Meaning of the Appointments Clause* (Apr. 16, 2007) (quotation marks omitted).[8] The Court should not adopt an interpretation of *Landry* that is inconsistent with Supreme Court precedent, Second Circuit precedent, and Executive Branch guidance.[9]

### B.  Patriarch Will Be Irreparably Harmed If the Administrative Proceeding Is Not Enjoined.

Absent preliminary injunctive relief, Patriarch will suffer irreparable harm because it will be imminently required to submit to an unconstitutional proceeding. This Court has held that "[w]here there is a deprivation of a constitutional right, no separate showing of irreparable harm is necessary." *Alexandre v. New York City Taxi & Limousine Comm'n*, 2007 WL 2826952, at *5 (S.D.N.Y. Sept. 28, 2007) (citing *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999)); *see also Jolly v. Coughlin*, 76 F.3d 458, 482 (2d Cir. 1996) (a "presumption of irreparable injury . . . flows from a violation of constitutional rights").

The core harm of undergoing an inherently unconstitutional system will be exacerbated here because SEC administrative proceedings lack the crucial procedural protections afforded to

---

[8]  http://www.justice.gov/sites/default/files/olc/opinions/2007/04/31/appointmentsclausev10.pdf

[9]  Notably, the Supreme Court explicitly declined to endorse the holding in *Landry* in a footnote to its decision in *Free Enterprise*, 561 U.S. at 507 n.10, while the dissenters flatly rejected the conclusions of the D.C. Circuit in that case. 561 U.S. at 542 (Breyer, J., dissenting) (quoting Justice Scalia's concurrence in *Freytag*, 501 U.S. at 878, finding that "[administrative law judges] are all executive officers.")

defendants in federal court. Compounding the injury that would incur as a result of these diminished procedural safeguards is the fact that these proceedings move at an accelerated pace.

A process so lacking in procedural safeguards makes it more likely that Patriarch will suffer an adverse outcome in a system that is already inherently unconstitutional under Article II. Indeed, during the 2014 fiscal year, the SEC prevailed in 100% of the cases that it brought in front of an SEC ALJ, supporting the conclusion that these proceedings result in outcomes heavily skewed in favor of the Commission, and against defendants. (Gunther Decl., Exhibit 3.) If the proceedings against Patriarch are permitted to go forward, the company will incur significant costs associated with the litigation, only to litigate the case a second time, potentially, if the SEC proceeded again in federal court.

Patriarch will also be subject to irreparable reputational and financial harm, should the SEC ALJ find for the Commission. Patriarch performs a sensitive role managing investment funds that invest in deeply distressed companies that employ tens of thousands of people. If Plaintiffs are forced to undergo an unconstitutional administrative proceeding, and are found liable, it may well be too late to salvage important value for the funds. Ultimately, such a proceeding could require Ms. Tilton to temporarily relinquish her leadership position within Patriarch, which would deprive Patriarch of the pivotal role that she plays in all aspects of its operations and in the operations of the portfolio companies (Tilton Decl. ¶¶ 7, 9-11). This would also potentially jeopardize the status of certain portfolio companies which have been classified as Women Owned Businesses by the Women's Business Enterprise National Council as a result of Ms. Tilton's leadership role, and have been granted government contracts based in part on this status (Tilton Decl. ¶¶ 10-11). Absent the requested relief, an administratively-imposed sanction may take effect prior to Patriarch receiving any judicial review of its constitutional claims. *See*

17 CFR § 201.360(d)(2); 15 U.S.C. § 77i(b).  Furthermore, once Patriarch has been harmed by any adverse decision resulting from the unconstitutional administrative proceeding, it would not be able to recover money damages given the governmental immunity doctrines that apply to actions taken by the SEC.  *See Lipkin v. SEC*, 468 F. Supp. 2d 614, 625 (S.D.N.Y. 2006); *Le v. SEC*, 542 F. Supp. 2d 1318, 1324 (N.D. Ga. 2008).

**C.  The Balance of Equities and Public Interest Weigh Strongly in Favor of Granting a Preliminary Injunction.**

The two remaining factors to consider in Patriarch's request for a preliminary injunction — whether (1) the balance of equities tips in its favor and (2) the public interest weighs in favor of granting the injunction — also strongly counsel in favor of the requested relief.

The SEC has been investigating the conduct alleged in the OIP for more than five years, and only now is seeking to move forward on an accelerated adjudicative schedule imposed by proceedings in front of an SEC ALJ.  In stark contrast to the severe, if not ruinous, consequences that would befall Patriarch should the requested relief be denied, the SEC will suffer no harm from temporarily enjoining the administrative proceeding against Patriarch, pending resolution of the constitutional issue presented here.  If they wish, the three-Commissioner majority that voted for the OIP could approve a complaint in District Court against the same parties seeking the same remedies.  Further, it is in the public interest for SEC enforcement proceedings to comport with the Constitution.  *See Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C. 1993).  Indeed, the Commission itself, as well as incipient or actual respondents in other SEC administrative proceedings, have an interest in clarifying whether the appointment process and system of tenure protections for SEC ALJs have rendered the proceedings unconstitutional.

## CONCLUSION

For the foregoing reasons, Patriarch respectfully requests the Court to issue a preliminary injunction barring the SEC from continuing administrative proceedings against Patriarch, pending resolution of this matter.

Dated: April 15, 2015
New York, NY

Respectfully submitted,

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036

David M. Zornow
Christopher J. Gunther

BRUNE & RICHARD LLP
One Battery Park Plaza
New York, NY 10004

Susan E. Brune
MaryAnn Sung