## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

LYNN TILTON; PATRIARCH
PARTNERS, LLC; PATRIARCH
PARTNERS VIII, LLC; PATRIARCH
PARTNERS XIV, LLC; AND PATRIACH
PARTNERS XV, LLC,

*Plaintiffs*,

v.

U.S. SECURITIES AND EXCHANGE
COMMISSION,

*Defendant*.

No. 15-cv-02472-RA

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

I.  THE PENDING SEC ADMINISTRATIVE PROCEEDING ................................2

II.  THE SEC'S ADMINISTRATIVE PROCESS ......................................................3

III.  THE SEC'S ADMINISTRATIVE LAW JUDGES..............................................4

    A.  The SEC's Use of ALJs ...............................................................................4

    B.  The ALJ Position Within the Competitive Service.......................................4

ARGUMENT ....................................................................................................6

I.  STANDARD OF REVIEW ....................................................................................6

II.  PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS ..............6

    A.  This Court Lacks Jurisdiction .......................................................................6

        1.  Plaintiffs can obtain meaningful judicial review of their claims ................7

        2.  Plaintiffs' Article II challenges are not wholly collateral
            to the review scheme......................................................................10

        3.  Plaintiffs' claims fall within the Commission's expertise .......................10

    B.  Plaintiffs Are Not Likely to Succeed On Their Article II Challenges
        Because SEC ALJs Are Employees, Not Inferior Officers of the
        United States .......................................................................11

        1.  SEC ALJs Have Only the Authority the SEC Decides to
            Delegate to Them and Do Not Have the Requisite
            "Significant Authority" to be Officers ......................................12

        2.  The History of the ALJ System, the ALJs' Appointments, and
            the Placement of ALJs Within the Competitive Service Confirm
            that Congress Intended ALJs to be Employees.........................16

C.      Plaintiffs Are Not Likely to Succeed On Their Article II Challenge
        to ALJs' Tenure Protections ................................................................21

III.    PLAINTIFFS WILL NOT BE IRREPARABLY HARMED ABSENT AN
        INJUNCTION.................................................................................................22

IV.     THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST ARE
        IN THE GOVERNMENT'S FAVOR ...........................................................24

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE(S)**

*Allan v. SEC,*
  577 F.2d 388 (7th Cir. 1978) .................................................................. 7

*Altman v. SEC,*
  687 F.3d 44 (2d Cir. 2012)............................................................... 1, 7, 9

*Altman v. SEC,*
  768 F. Supp. 2d 554 (S.D.N.Y. 2011)...................................................... 7

*Amandola v. Town of Babylon,*
  251 F.3d 339 (2d Cir. 2001)..................................................................... 22

*Aref v. U.S.,*
  452 F.3d 202 (2d Cir. 2006)..................................................................... 23

*In the Matter of Bebo & Buono,*
  Exchange Act Release No. 2510, slip op. (SEC ALJ April 7, 2015)..................... 13

*Bebo v. SEC,*
  2015 WL 905349 (E.D. Wis. March 3, 2015) ..................................... 7, 9

*Brennan v. HHS,*
  787 F.2d 1559 (Fed. Cir. 1986).............................................................. 20

*Buckley v. Valeo,*
  424 U.S. 1 (1976)............................................................................... 11, 12

*Burnap v. United States,*
  252 U.S. 512 (1920)................................................................................ 11

*Burroughs v. County of Nassau,*
  2014 WL 2587580 (JS)(WDW) (E.D.N.Y. June 9, 2014)..................... 23

*Cannon v. Univ. of Chicago,*
  441 U.S. 677 (1979)................................................................................ 17

*Charles Hughes & Co. v. SEC,*
  139 F.2d 434 (2d Cir. 1943).................................................................... 4

*Chau v. SEC,*
  -- F. Supp. 3d --, 2014 WL 6984236 (S.D.N.Y. 2014).................... 7, 8, 10

*CleanTech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*,
No. 11-cv-9358, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) ............................................ 7, 25

*In the Matter of Conrad P. Seghers*,
Investment Advisers Act Release No. 2656, 2007 WL 2790633
(SEC Sept. 26, 2007) ......................................................................................................... 9

*Dames & Moore v. Regan*,
453 U.S. 654 (1981) ........................................................................................................... 22

*Duka v. SEC*,
No. 15-cv-357 (S.D.N.Y. April 15, 2015) ........................................................... 9, 21, 24, 25

*Edmond v. United States*,
520 U.S. 651 (1997) ...................................................................................................... 15, 16

*EEOC v. Local, 638*,
No. 71 Civ. 2877, 1995 WL 355589 (S.D.N.Y. June 7, 1995) ........................................... 23

*Elgin v. U.S. Dep't of Treasury*,
132 S. Ct. 2126 (2012) ......................................................................................... 6, 9, 10, 11

*FTC v. Standard Oil*,
449 U.S. 232 (1980) ........................................................................................................... 23

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) ................................................................................................. 2

*Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.*,
375 F. App'x 109 (2d Cir. 2010) ........................................................................................ 23

*Free Enterprise Fund v. Public Company Accounting Oversight Bd.*,
561 U.S. 477 (2010) .................................................................................................... passim

*Freytag v. Comm'r*,
501 U.S. 868 (1991) .............................................................................................. 11, 14, 15

*Galvin v. New York Racing Ass'n*,
70 F.Supp.2d 163 (E.D.N.Y. 1998) .................................................................................... 23

*Gray v. Office of Pers. Mgmt.*,
771 F.2d 1504 (D.C. Cir. 1985) .......................................................................................... 19

*In the Matter of Harding Advisory LLC & Wing F. Chau*,
Release No. 734, 2015 WL 137642 (SEC Jan. 12, 2015) ................................................... 8

*Hare v. Hurwitz,*
    248 F.2d 458 (2d Cir. 1957) ................................................................... 17

*Ho v. Donovan,*
    569 F.3d 677 (7th Cir. 2009) ................................................................. 20

*Hohe v. Casey,*
    868 F.2d 69 (3d Cir. 1989) ..................................................................... 23

*Humphrey's Executor v. United States,*
    295 U.S. 602 (1935) ............................................................................... 22

*Jarkesy v. SEC,*
    48 F. Supp. 3d 32 (D.D.C. 2014) ............................................................. 7

*Kamerling v. Massanari,*
    295 F.3d 206 (2d Cir. 2002) ................................................................... 24

*Landry v. FDIC,*
    204 F.3d 1125 (D.C. Cir. 2000) ............................................. 2, 12, 14, 15

*Latino Officers Ass'n v. Safir,*
    170 F.3d 167 (2d Cir. 1999) ................................................................... 22

*Mahoney v. Donovan,*
    721 F.3d 633 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 2724 (2014) ................................. 5, 20

*McGrath v. United States,*
    275 F. 294 (2d Cir. 1921) ....................................................................... 17

*Morrison v. Olson,*
    487 U.S. 654 (1988) ......................................................................... 17, 21

*Munaf v. Geren,*
    553 U.S. 674 (2008) ................................................................................. 6

*Myers v. United States,*
    272 U.S. 52 (1926) ........................................................................... 11, 18

*Nash v. Bowen,*
    869 F.2d 675 (2d Cir. 1989) ........................................................ 4, 14, 20

*Okin v. SEC,*
    143 F.2d 960 (2d Cir. 1944) ..................................................................... 4

*Petroleum Exploration v. Public Service Com'n of Kentucky,*
    304 U.S. 209 (1938) ................................................................... 23

*Public Serv. Co. of New Hampshire v. Town of West Newbury,*
    835 F.2d 380 (1st Cir.1987) ....................................................... 22

*Ramspeck v. Fed. Trial Exam'rs Conference,*
    345 U.S. 128 (1953) ............................................................. 18, 19

*Renegotiation Board v. Bannercraft Clothing Co.,*
    415 U.S. 1 (1973) ....................................................................... 23

*Ryder v. United States,*
    515 U.S. 177 (1995) ................................................................... 16

*SEC v. Management Dynamics, Inc.,*
    515 F.2d 801 (2d Cir. 1975) ...................................................... 24

*Sampson v. Murray,*
    415 U.S. 61 (1974) ..................................................................... 24

*Samuels, Kramer & Co. v. Comm'r,*
    930 F.2d 975 (2d Cir. 1991) ................................................. 12, 14

*Savage v. Gorski,*
    850 F.2d 64 (2d Cir. 1988) ........................................................ 22

*SEC v. Finazzo,*
    2008 WL 1721517 (S.D.N.Y. April 11, 2008) ............................. 2

*In re Sealed Case,*
    838 F.2d 476 (D.C. Cir.) ....................................................... 17, 20

*Seghers v. SEC,*
    548 F.3d 129 (D.C. Cir. 2008) .................................................... 8

*Smith v. Fredrico,*
    2013 WL 122954 (E.D.N.Y. Jan. 8, 2013) ................................. 23

*Stanley v. U.S. Dep't of Justice,*
    423 F.3d 1271 (Fed. Cir. 2005) ................................................. 20

*Statharos v. N.Y. City Taxi and Limousine Comm'n,*
    198 F.3d 317 (2d Cir. 1999) ...................................................... 22

*Sturm, Ruger & Co. v. Chao,*
    300 F.3d 867 (D.C. Cir. 2002) ........................................................................ 10

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ........................................................................ 6, 7, 8, 11

*In the Matter of Timbervest, LLC, et al.,*
    Investment Advisers Act Release No. 4003, 2015 WL 242393 (SEC Jan. 20, 2015) ............... 8

*Time Warner Cable of N.Y.C. v. Bloomberg L.P.,*
    118 F.3d 917 (2d Cir. 1997) ........................................................................ 6

*Tucker v. Comm'r,*
    676 F.3d 1129 (D.C. Cir. 2012) ........................................................................ 11, 16

*United States v. Fausto,*
    484 U.S. 439 (1988) ........................................................................ 19

*United States v. Germaine,*
    99 U.S. 508 (1878) ........................................................................ 12, 17

*United States v. Mouat,*
    124 U.S. 303 (1888) ........................................................................ 17

*United States v. Smith,*
    124 U.S. 525 (1888) ........................................................................ 17

*United States v. Wittig,*
    575 F.3d 1085 (10th Cir. 2009) ........................................................................ 25

*VIP of Berlin, LLC v. Town of Berlin,*
    593 F.3d 179 (2d Cir. 2010) ........................................................................ 1, 6

*In the Matter of Vladen Larry Vindman,*
    Securities Act Release No. 8679, 2006 WL 985308 (SEC April 14, 2006) ............................ 9

*Weiss v. United States,*
    510 U.S. 163 (1994) ........................................................................ 15, 16

*Wise v. Withers,*
    7 U.S. 331 (1806) ........................................................................ 17

*Withrow v. Larkin,,*
    421 U.S. 13 (1975) ........................................................................ 9

*Wong Yang Sung v. McGrath*,
  339 U.S. 33 (1950) ................................................................................ 18


## STATUTES


5 U.S.C. § 557(b) ................................................................................... 14
5 U.S.C. §§ 1101 et seq., ........................................................................... 5
5 U.S.C. § 1204 ........................................................................................ 5
5 U.S.C. § 1212 ........................................................................................ 5
5 U.S.C. § 1214 ........................................................................................ 5
5 U.S.C. § 1215 ........................................................................................ 5
5 U.S.C. § 1221 ........................................................................................ 5
5 U.S.C. § 2102 .................................................................................. 4, 18
5 U.S.C. § 2301 ........................................................................................ 5
5 U.S.C. § 2302(a)(2)(B)(i) .................................................................... 20
5 U.S.C. § 3105 ........................................................................... 4, 12, 17
5 U.S.C. § 3313 ........................................................................................ 5
5 U.S.C. § 3317 ........................................................................................ 5
5 U.S.C. § 3318 ........................................................................................ 5
5 U.S.C. § 7511(b)(2) ............................................................................. 20
5 U.S.C. § 7521 ................................................................................ passim
5 U.S.C. § 7521(a) .................................................................................... 6
5 U.S.C. § 7521(b) .................................................................................... 6
10 U.S.C. § 816(1)(B) ............................................................................ 16
10 U.S.C. § 816(2)(C) ............................................................................ 16
10 U.S.C. § 851(d) ................................................................................. 16
10 U.S.C. § 862(a)(1) ............................................................................. 16
15 U.S.C. § 77i(a) ................................................................................. 4, 7
15 U.S.C. § 78d-1 ................................................................................... 12
15 U.S.C. § 78d-1(a) ................................................................................ 4
15 U.S.C. § 78d-1(b) ................................................................................ 4
15 U.S.C. § 78d-1(c) ............................................................................... 13
15 U.S.C. § 78y(a)(1) ........................................................................... 4, 7
15 U.S.C. § 78y(a)(5) ............................................................................... 8
15 U.S.C. § 80a-9 ..................................................................................... 3
15 U.S.C. § 80a-41 ................................................................................... 3
15 U.S.C. § 80a-42 ............................................................................... 4, 7
15 U.S.C. § 80b-3 ..................................................................................... 3
15 U.S.C. § 80b-9 ..................................................................................... 3
15 U.S.C. § 80b-13(a) ........................................................................... 4, 7


## REGULATIONS


5 C.F.R. § 212.101 ................................................................................... 4
5 C.F.R. § 332.401 ................................................................................... 5

5 C.F.R. § 332.402 ........................................................................................ 5

5 C.F.R. § 332.404 ........................................................................................ 5

5 C.F.R. § 930.201(b) .................................................................................... 4

5 C.F.R. § 930.201(d) .................................................................................... 5

5 C.F.R. § 930.201(e) .................................................................................... 5

5 C.F.R. § 930.201(e)(2) ................................................................................ 5

5 C.F.R. § 930.201(e)(3) ................................................................................ 5

5 C.F.R. § 930.203 ........................................................................................ 5

5 C.F.R. § 930.204 ...................................................................................... 19

5 C.F.R. § 930.210 ........................................................................................ 6

5 C.F.R. § 930.211 ........................................................................................ 5

5 C.F.R. §§ 1201.137 et seq. .................................................................... 5, 19

5 C.F.R. § 1201.139 ...................................................................................... 6

12 C.F.R. § 308.4(c) .................................................................................... 15

17 C.F.R. § 200.14(a) .................................................................................... 4

17 C.F.R. § 201.101(a)(5) ...................................................................... 3, 4, 12

17 C.F.R. § 201.230 ...................................................................................... 8

17 C.F.R. § 201.320 ...................................................................................... 8

17 C.F.R. § 201.326 ...................................................................................... 8

17 C.F.R. § 201.360 .................................................................................... 22

17 C.F.R. § 201.360(a)(1) ........................................................................ 3, 13

17 C.F.R. § 201.360(d)(2) ........................................................................ 3, 13

17 C.F.R. § 201.410 .................................................................................... 22

17 C.F.R. § 201.411 .................................................................................... 22

17 C.F.R. § 201.411(b) ............................................................................ 3, 15

17 C.F.R. § 201.411(b)(2)(ii)(A) ................................................................ 15

17 C.F.R. § 201.411(c) ........................................................................ 3, 13, 15

17 C.F.R. § 201.411(d) ................................................................................ 15

17 C.F.R. § 201.411(f) .............................................................................. 4, 14

17 C.F.R. § 201.452 ............................................................................... passim

## UNITED STATES CONSTITUTION

U.S. Const. art. II, § 2, cl. 2 ............................................................. 11, 16, 17

## MISCELLANEOUS

*Authority of Education Department Administrative Law Judges in Conducting Hearings*,
   14 Op. O.L.C. 1 (1990) ............................................................................ 4

## INTRODUCTION

Plaintiffs, Lynn Tilton and the investment companies that she directs, seek a preliminary injunction to halt an ongoing Securities and Exchange Commission ("SEC") administrative proceeding. But there is no support for such a drastic remedy. Plaintiffs are respondents in a run-of-the-mill SEC proceeding—the kind of proceeding that has been occurring for decades, and that occurs by the dozens every year. And if the Court does not issue the relief Plaintiffs seek, the only consequence is that Plaintiffs will have to litigate the claims presented in the administrative proceeding under the scheme that Congress devised, with judicial review thereafter in the court of appeals. Such mundane circumstances do not call for the extraordinary remedy of thwarting the enforcement and adjudicatory authority of the SEC over alleged securities violations.

The law supports this commonsense conclusion. Because Plaintiffs seek to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme" in a way that would alter the status quo, they must meet a high bar. *VIP of Berlin, LLC v. Town of Berlin*, 593 F.3d 179, 185-86 (2d Cir. 2010). Plaintiffs must demonstrate a clear or substantial likelihood of success on the merits that they would be irreparably harmed absent an injunction, and that the public interest and the balance of equities do not counsel against entering an injunction. *Id.* They cannot satisfy this demanding standard.

Plaintiffs cannot demonstrate a clear entitlement to relief. To start, this Court lacks jurisdiction over Plaintiffs' suit. Congress created an exclusive remedial framework for resolving challenges to SEC administrative proceedings that divests this Court of jurisdiction. Under this framework, challenges must be raised before the agency, and judicial review is available in the courts of appeals. Indeed, with narrow exceptions that are not applicable here, the Second Circuit has held that district courts cannot exercise jurisdiction over challenges like Plaintiffs' under the exclusive review scheme in the federal securities laws. *Altman v. SEC*, 687 F.3d 44 (2d Cir. 2012) (*per curiam*). For this reason alone, Plaintiffs have no likelihood of success because this case does not belong in district court at all.

Plaintiffs' claims fare no better on the merits. They depend on the SEC's administrative

law judges ("ALJs") being classified as officers of the United States, rather than mere employees of the government, because the Constitution does not dictate how government employees should be appointed or the scope of the President's authority to remove employees. But ALJs are employees, and not officers. ALJs' functions are limited and do not include issuing final decisions (which only the Commission can do). Congress has long treated ALJs as employees through the methods of appointment and hiring it established and by deciding to place them within the competitive civil service. It is therefore unsurprising that the only court of appeals to address this issue decided that the Federal Deposit Insurance Corporation's ALJs were employees, not officers. *Landry v. FDIC*, 204 F.3d 1125, 1132-34 (D.C. Cir. 2000).

Plaintiffs' motion must also be denied because they have failed to establish the "single most important prerequisite for the issuance of a preliminary injunction," a showing of irreparable harm. *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). Plaintiffs' argument that allegations of a constitutional violation presumptively establish irreparable harm flies in the face of precedent. Plaintiffs' invocation of potential litigation expense or threats to her business reputation are also legally insufficient to demonstrate irreparable harm. And even if irreparable harm had been established—which it has not—the public interest and the balance of equities weigh against entering the requested injunction. The public interest factor tilts against an injunction because "there is a significant public interest in allowing government agencies, like the SEC, to enforce federal securities laws." *SEC v. Finazzo*, No. M18-304, 2008 WL 1721517, at *5 (S.D.N.Y. April 11, 2008).

In short, the relevant elements dictate that Plaintiffs' motion for a preliminary injunction should be denied.

## BACKGROUND

## I.  THE PENDING SEC ADMINISTRATIVE PROCEEDING

Plaintiffs are Patriarch Partners, LLC, its CEO and founder Lynn Tilton, and affiliated companies. Compl. ¶¶ 8-10, 16. On March 30, 2015, the SEC issued an Order Instituting Public Administrative and Cease-and-Desist Proceedings ("OIP") against Plaintiffs pursuant to the

Investment Advisers Act of 1940 and the Investment Company Act of 1940. Compl. ¶ 5; *see* Ex. 1 to Decl. of Christopher J. Gunther in Support of Pls.' Mot. for Preliminary Inj. (April 15, 2015), ECF No. 11-1. The OIP alleges that Plaintiffs have defrauded three funds they manage— which raised more than $2.5 billion from investors—by providing false and misleading information and by engaging in a deceptive scheme, practice, and course of business relating to the values of assets in those funds. *Id.* at 2.

## II.  THE SEC'S ADMINISTRATIVE PROCESS

The federal securities laws, including the Advisers Act and the Investment Company Act, provide the Commission discretion to address potential violations of those laws either by filing a civil action in district court or by initiating an administrative proceeding. 15 U.S.C. §§ 80b-3, 80b-9, 80a-9, 80a-41. If the Commission decides to institute an administrative proceeding, it also decides whether the hearing officer—who will preside over the initial stages of the proceeding— should be an ALJ, a panel of Commissioners constituting less than a quorum of the Commission, an individual Commissioner, or another duly authorized person. 17 C.F.R. § 201.101(a)(5).

The SEC has designated an ALJ to be the hearing officer in the administrative proceeding against Plaintiffs. In the Matter of *Lynn Tilton et al.*, Administrative Proceedings Rulings Release No. 2494 (SEC April 6, 2015), *available at* http://www.sec.gov/alj/aljorders/2015/ap-2494.pdf. The ALJ will issue the initial decision, 17 C.F.R. § 201.360(a)(1), which Plaintiffs or the SEC's Division of Enforcement may appeal to the Commission by filing a petition for review, *id.* § 201.410. The Commission may grant a petition for review based on a non-exhaustive list of factors (except in cases where review is mandatory). *Id.* § 201.411(b). The Commission also "may, on its own initiative, order review of any initial decision, or any portion of any initial decision," and the vote of one Commissioner is sufficient to bring the matter before the Commission for review. *Id.* § 201.411(c). If no petition for review is filed and the Commission does not review on its own initiative, "the Commission will issue an order" making the ALJ's initial "decision . . . final as to" the respondent. *Id.* § 201.360(d)(2). The finality order will also specify the date on which sanctions, if any, take effect. *Id*.

If the Commission grants review of the ALJ's initial decision, that review is *de novo*. *Id.* §§ 201.411(a), 201.452. If a majority of participating Commissioners does not agree to a disposition, the ALJ's "initial decision shall be of no effect, and an order will be issued [by the Commission] in accordance with this result." *Id.* § 201.411(f). A respondent may petition for review of any adverse final Commission order in a federal court of appeals, which has jurisdiction "to affirm, modify, or to set aside the order in whole or in part." 15 U.S.C. §§ 77i(a), 78y(a)(1), 80a-42, 80b-13(a),

## III. THE SEC'S ADMINISTRATIVE LAW JUDGES

### A. The SEC's Use of ALJs

Pursuant to statute, the SEC has the discretion to appoint as many ALJs as is warranted. 5 U.S.C. § 3105. The SEC has used ALJs since the Commission's early days. *See Charles Hughes & Co. v. SEC*, 139 F.2d 434 (2d Cir. 1943); *Okin v. SEC*, 143 F.2d 960 (2d Cir. 1944). The SEC's enabling statute conferred on the SEC the discretion to use ALJs, permitting the SEC to delegate any of its functions to an ALJ but stating that the agency "retain[s] a discretionary right to review" any delegated functions. 15 U.S.C. § 78d-1(a), (b). SEC ALJs are responsible for the fair and orderly conduct of the initial stages of proceedings for which they are designated to serve as hearing officers. *See* 17 C.F.R. § 200.14(a); *id.* § 201.101(a)(5). They are subject to supervision and are subordinate to the Commission on questions of policy and interpretation of law. *See, e.g.*, *Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir. 1989); *Auth. of Educ. Dep't Admin. Law Judges in Conducting Hearings*, 14 Op. O.L.C. 1, 2 (1990) (ALJs "owe the same allegiance to the [agency's] policies and regulations as any other [agency] employee").

### B. The ALJ Position Within the Competitive Service

At the SEC, as throughout the federal government, ALJs are civil service employees in the "competitive service" system. 5 C.F.R. § 930.201(b). The competitive service is the most basic category within the civil service; it includes positions such as corrections officers, human resources specialists, and paralegals. *See* 5 U.S.C. § 2102; 5 C.F.R. § 212.101.

4

The Civil Service Reform Act of 1978 (the "CSRA"), 5 U.S.C. §§ 1101 *et seq.*, governs federal civil-service employment, including SEC ALJs' employment. *See, e.g.*, *Mahoney v. Donovan*, 721 F.3d 633, 635 (D.C. Cir. 2013), *cert. denied*, 134 S. Ct. 2724 (2014). The CSRA regulates SEC ALJs' employment as it does that of other federal employees by, *inter alia*: setting merit systems principles to guide agency personnel management, 5 U.S.C. § 2301; describing the bases on which personnel actions against employees, including ALJs, are prohibited, *id.* § 2302; and specifying the administrative and judicial remedies available in response to such prohibited personnel practices, *id.* §§ 1204, 1212, 1214, 1215, 1221.

The Office of Personnel Management ("OPM"), which oversees federal employment for ALJs as it does for other rank-and-file civil servants, administers a detailed civil service system for selecting ALJs, including conducting examinations for ALJ candidates, *see id.* §§ 1104, 1302; 5 C.F.R. §§ 930.201(d)-(e), 930.203; ranking ALJ applicants for placement on a register of eligible candidates according to their qualifications and numerical ratings, 5 U.S.C. § 3313; 5 C.F.R. § 332.401; and issuing "certificate[s] of eligibles" from which federal agencies— including the SEC—may select individuals to fill ALJ vacancies, 5 U.S.C. §§ 3317, 3318; 5 C.F.R. §§ 332.402, 332.404. OPM oversees each agency's "decisions concerning the appointment, pay, and tenure" of ALJs, *id.* § 930.201(e)(2), and establishes classification and qualification standards for the ALJ positions, *id.* § 930.201(e)(3). Like other appointments in the competitive service, appointment as an SEC ALJ is subject to an investigation and adjudication of suitability under OPM's suitability requirements. *Id.* § 930.204(a); *id.* §§ 731.101 *et seq.*

Like other employees, an ALJ who believes that his employing agency has engaged in a prohibited personnel practice can seek redress either through the Office of Special Counsel or the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. §§ 1204, 1212, 1214, 1215, 1221. Pursuant to statute, "the agency in which [an] administrative law judge is employed"—here, the SEC—may propose certain specified personnel actions (*i.e.*, removal, suspension, reduction in grade, reduction in pay, or a furlough of 30 days or less) against an ALJ. *Id.* § 7521; 5 C.F.R. §§ 930.211, 1201.137. The employing agency initiates the proceedings, which include an

opportunity for a hearing before the MSPB. 5 U.S.C. § 7521; 5 C.F.R. § 1201.139. The MSPB then decides whether "good cause" exists to take the proposed personnel action, such as removal, against the ALJ. 5 U.S.C. § 7521(a). Finally, SEC ALJs are subject to agency reductions-in-force, again like other employees. *Id.* § 7521(b); 5 C.F.R. § 930.210.

## ARGUMENT

## I.   STANDARD OF REVIEW

Preliminary injunctions are "extraordinary and drastic remed[ies]" that are "never . . . awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quotation omitted). A party seeking, through an application for preliminary relief, to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme" in a way that would "alter, rather than maintain, the status quo . . . must demonstrate irreparable harm and a clear or substantial likelihood of success on the merits." *Town of Berlin*, 593 F.3d at 185-86 (quotation omitted). Where, as here, there are serious questions as to the Court's jurisdiction, it is "more *unlikely*" that the plaintiff can establish a "'likelihood of success on the merits.'" *Munaf*, 553 U.S. at 690. Finally, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests." *Time Warner Cable of N.Y.C. v. Bloomberg L.P.*, 118 F.3d 917, 929 (2d Cir. 1997).

## II.   PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS

### A.   This Court Lacks Jurisdiction

Plaintiffs' constitutional challenges to their SEC administrative proceeding are not properly before this Court; on this basis alone, Plaintiffs cannot show a likelihood of success. The law is settled that a district court has no jurisdiction to review an agency action if "the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)); *see, e.g.*, *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126 (2012). The Second Circuit and other courts have held that the federal

securities laws display a fairly discernible intent to channel review of Commission decisions through the administrative process with direct review in the courts of appeals, and this exclusive review scheme precludes district court jurisdiction over challenges to Commission administrative proceedings. *See Altman*, 687 F.3d at 45-46.[1] District court review of agency action is permitted only in the narrow circumstances where (1) "a finding of preclusion [would] foreclose all meaningful judicial review"; (2) the plaintiff's suit "is wholly collateral to a statute's review provisions"; and (3) the plaintiff's "claims are outside the agency's expertise." *Free Enterprise*, 561 U.S. at 489. The first factor is the most important and "trumps other considerations." *Altman v. SEC*, 768 F. Supp. 2d 554, 559 (S.D.N.Y. 2011), *aff'd* "for the reasons set forth" by the district court, 687 F.3d at 46. Plaintiffs cannot establish any of these factors, let alone all three.

**1.  Plaintiffs can obtain meaningful judicial review of their claims.**

There is no dispute that the object of Plaintiffs' suit is to halt the ongoing SEC administrative proceeding against them and that if Plaintiffs were "aggrieved" in that proceeding, they could seek review in a court of appeals. *See* 15 U.S.C. § 80b-13(a), 80a-42. The appellate court, in turn, could decide whether to set aside the Commission order after considering Plaintiffs' constitutional and other arguments or to remand for the taking of additional evidence. The availability of court of appeals review establishes that Plaintiffs can have meaningful judicial review of their claims. *Elgin* 132 S. Ct. at 2137; *Thunder Basin*, 510 U.S. at 215.

Plaintiffs argue that they cannot meaningfully litigate their Article II claims because those claims allegedly cannot be asserted as defenses or counterclaims in the administrative proceeding. Pls.' Mot. at 11 (April 15, 2015), ECF No. 13. Plaintiffs, however, can raise their

---

[1] *See, e.g.*, *Bebo v. SEC*, No. 15-c-3, 2015 WL 905349, *4 (E.D. Wis. March 3, 2015) (dismissing for lack of jurisdiction an Article II challenge to SEC administrative proceedings identical to one raised here), *mot. for inj. pending appeal denied*, No. 15-1511 (7th Cir. April 1, 2015); *Chau v. SEC*, -- F. Supp. 3d --, 2014 WL 6984236, at *2-6, 14 (S.D.N.Y. 2014); *Jarkesy v. SEC*, 48 F. Supp. 3d 32 (D.D.C. 2014); *CleanTech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*, No. 11-cv-9358, 2012 WL 345902, at *1-2 (S.D.N.Y. Jan. 31, 2012); *see also Allan v. SEC*, 577 F.2d 388, 391-92 (7th Cir. 1978). The various review provisions in the federal securities laws are materially identical. *See* 15 U.S.C. §§ 77i(a), 78y(a), 80a-42, 80b-13(a).

Article II claims as affirmative defenses, as other respondents have done,[2] and the Commission has invited supplemental briefing on an Article II claim identical to that raised here in another proceeding.[3] That Plaintiffs' Article II challenges are not technically counterclaims is irrelevant because Plaintiffs ultimately seek to terminate the administrative proceeding, and they can adjudicate their entitlement to this result through their affirmative defenses. *Chau*, 2014 WL 6984236, at *11-13 (the "SEC's procedures" have hardly "condemned plaintiffs' [constitutional] claim[s] to failure"). Moreover, contrary to Plaintiffs' argument, Pls.' Mot. at 11, the administrative record can include evidence relevant to an affirmative defense. *See* 17 C.F.R. §§ 201.230, 201.320, 201.326. In reviewing the ALJ's initial decision the Commission also can order that the record be supplemented, *id.* § 201.452; and further, the court of appeals can remand the case to the SEC to conduct any needed fact-finding, 15 U.S.C. § 78y(a)(5).

Plaintiffs also argue that an SEC ALJ "has expressed 'grave doubt' that an ALJ even has the authority to consider a constitutional claim." Pls.' Mot. at 11-12. But the Commission, which enters all final agency decisions, has entertained constitutional claims.[4] And, regardless of the SEC's ability to adjudicate Plaintiffs' constitutional claims, a federal court of appeals will be able to entertain them (as necessary), and that is all that is required for meaningful judicial review. *See Elgin*, 132 S. Ct. at 2136-37 (agency's ability to declare a statute unconstitutional irrelevant); *Thunder Basin*, 510 U.S. at 215 (even if not reviewable by the agency, "petitioner's

---

[2] *See, e.g.*, Answer and Affirmative Defenses of Laurie Bebo at 12-13, File No. 3-16293 (filed Jan. 5, 2015), *available at* http://www.sec.gov/litigation/apdocuments/ap-3-16293.xml; *see also In the Matter of Harding Advisory LLC & Wing F. Chau*, SEC Release No. 734, 2015 WL 137642, at *84, 86-87 (SEC ALJ Jan. 12, 2015) (initial decision by SEC ALJ rejecting "on the merits" equal protection and due process claims the respondents raised as affirmative defenses).

[3] *See In the Matter of Timbervest, LLC et al.*, Investment Advisers Act Release No. 4003, 2015 WL 242393 (SEC Jan. 20, 2015).

[4] *E.g.*, *In the Matter of Conrad P. Seghers*, Investment Advisers Act Release No. 2656, 2007 WL 2790633, at *4 (SEC Sept. 26, 2007) (rejecting due process claim), *petition for review denied by Seghers v. SEC*, 548 F.3d 129, 136-37 (D.C. Cir. 2008) (same); *In the Matter of Vladen Larry Vindman*, Securities Act Release No. 8679, 2006 WL 985308, at *11 & n.60 (SEC April 14, 2006) (rejecting Seventh Amendment claim).

statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals").[5] Finally, Plaintiffs' unfounded suggestion that the ALJ and the Commission may be biased in deciding the Article II challenges, *see* Pls.' Mot. at 12, should be rejected because much more than speculation is needed to rebut the "presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Finally, Plaintiffs' reliance on *Free Enterprise*, 561 U.S. 477, is misplaced. In that case, an accounting firm sought a declaration that the existence of the Public Company Accounting Oversight Board violated the Appointments Clause and contravened the separation of powers. *Id.* at 487. Though petitioner was subject to a Board investigation, no formal action had been taken against it, and even if there were, it was not certain that judicial review would be available because "not every Board action is encapsulated in a final Commission order." *Id.* at 490. The firm's only path to judicial review was to initiate its own agency proceeding by either challenging a "random" Board rule or refusing to comply with a Board request. *Id.* That was not a "meaningful avenue of relief," the Court held, because courts "normally do not require plaintiffs to bet the farm . . . by taking the violative action before testing the validity of the law." *Id.* at 490-91 (quotations omitted). Here, in contrast, Plaintiffs are already respondents in an administrative proceeding. They can raise their constitutional claims now in that proceeding and obtain judicial review later, if necessary. And any argument that judicial review would come too

---

[5] In refusing to enjoin an SEC administrative proceeding in a suit raising the same Article II claim raised by Plaintiffs here, the court in *Duka v. SEC*, No. 15-cv-357 (S.D.N.Y. April 15, 2015), ECF No. 33, held that the plaintiff had no meaningful judicial review of her constitutional challenge. This was so, the court found, because the plaintiff would be irreparably harmed simply by being subjected to the administrative process. *Id.*, slip op. at 10-15. This jurisdictional analysis is not persuasive. The finding of irreparable harm was based on the law of standing. *See id.*, slip op. at 11-12 & n.9. But it has never been the case that anyone with standing could circumvent the SEC's exclusive remedial scheme. Indeed, such logic would eviscerate exclusive remedial frameworks like that in the federal securities laws. That analysis is contrary to the weight of precedent, *see, e.g., Bebo*, 2015 WL 905349, at *2 (finding court lacked jurisdiction to entertain Article II challenge); *Altman*, 687 F.3d at 46, misconstrues the Supreme Court's governing decisions in *Free Enterprise* and *Elgin*, and should be rejected.

late is meritless because, as will be discussed below, such delay does not constitute irreparable harm as a matter of law.

**2. Plaintiffs' Article II challenges are not wholly collateral to the review scheme.**

Plaintiffs' claims are not collateral to the statutory provisions governing review of SEC administrative proceeding because they are the means by which Plaintiffs seek to halt the administrative proceeding against them. *See, e.g.*, *Elgin*, 132 S. Ct. at 2139; *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867, 867 (D.C. Cir. 2002); *Chau*, 2014 WL 6984236, at *12. Citing *Free Enterprise*, Plaintiffs argue that facial constitutional claims, such as their Article II claims, are wholly collateral to the administrative proceeding. Pls.' Mot. at 9. But the Supreme Court in *Elgin* has already held that whether a claim must be channeled through an exclusive review scheme does not turn the "amorphous" distinction between facial and as-applied challenges. 132 S. Ct. at 2135-36. The *Elgin* court rejected the suggestion that facial constitutional challenges may be brought in the district court despite the existence of CSRA's exclusive review scheme. *Id.* at 2135. As the Court reasoned, a "jurisdictional rule based on the nature of a . . . constitutional claim would deprive [litigants], the [agency], and the district court of clear guidance about the proper forum for . . . claims at the outset of the case." *Id.*

*Free Enterprise* is not to the contrary. There the Court found petitioners' constitutional challenge to be "wholly collateral" not because of the nature of the claim, but because the challenge was not to "any Commission orders or rules from which review might be sought." *Free Enterprise*, 561 U.S. at 489-90. The situation here is altogether different: Plaintiffs' constitutional challenges flow from the fact that they are the subject of the very administrative proceeding that they seek through this action to set aside as unconstitutional.

**3. Plaintiffs' claims fall within the Commission's expertise.**

The Commission has expertise to bring to bear on Plaintiffs' Article II claims. Agencies are the experts on "the many threshold questions that may accompany a constitutional claim." *Elgin*, 132 S. Ct. at 2140. Here, Plaintiffs' claims raise questions of statutory and regulatory interpretation relating to the Commission's Rules of Practice and the extent of the Commission's

supervision and control over SEC ALJs as governed by these rules. *E.g.*, Compl. ¶¶ 45-73. Determining whether SEC ALJs are "'officers' of the United States" for purposes of Article II requires assessing, as matters of law, the SEC ALJs' authority and duties under these rules. The SEC is in the best position to interpret its own Rules of Practice in the first instance, *see Thunder Basin*, 510 U.S. at 214-15, and in any event, the Commission's "interpretation could alleviate constitutional concerns" or the Commission could resolve the proceeding in Plaintiffs' favor, thus avoiding the constitutional issues altogether, *see Elgin*, 132 S. Ct. at 2140.

In sum, this Court lacks jurisdiction over Plaintiffs' claims.

### B. Plaintiffs Are Not Likely to Succeed On Their Article II Challenges Because SEC ALJs Are Employees, Not Inferior Officers of the United States

Even if this Court had jurisdiction, Plaintiffs are not likely to succeed on the merits of their Article II challenges. Plaintiffs allege that the SEC ALJs' appointments as well as their tenure protections violate Article II of the Constitution. But SEC ALJs are not constitutional officers, and thus neither their appointments nor their removals implicate Article II.

The Appointments Clause provides that the President shall appoint all "Officers of the United States" whose appointments are not otherwise provided for in the Clause, and further permits Congress to "vest the Appointment of . . . inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. The power to appoint encompasses the power to remove, *Myers v. United States*, 272 U.S. 52, 161 (1926), but the Appointments Clause does not speak to the power to appoint or remove employees who are not officers, *see Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976); *Tucker v. Comm'r*, 676 F.3d 1129, 1132 (D.C. Cir. 2012).

The Supreme Court has said that whether incumbents are classified as officers or employees is determined by "the manner in which Congress has specifically provided for the creation of the . . . positions, their duties and appointment thereto." *Burnap v. United States*, 252 U.S. 512, 516 (1920); *see also Freytag v. Comm'r*, 501 U.S. 868, 881 (1991) (considering "the duties, salary, and means of appointment for th[e] office" of special trial judge of the United

States Tax Court in determining whether special trial judges were officers or employees (citing *Burnap*, 252 U.S. at 516-17; *United States v. Germaine*, 99 U.S. 508, 511-12 (1878))). The Court has also held that to be an officer, a person must "exercis[e] significant authority pursuant to the laws of the United States," *Buckley*, 424 U.S. at 125-26, although the vast majority of government personnel are "lesser functionaries subordinate to officers of the United States," *id.* at 126 & n.162; *see Free Enterprise*, 561 U.S. at 506 n.9; *Germaine*, 99 U.S. at 509.

As discussed below, the SEC's discretion whether and how to use ALJs, the ALJs' role within the SEC's decision-making scheme, and the history of the ALJ system, including Congress's placement of the position within the competitive service system, all reflect that SEC ALJs are "mere aids" to the SEC and not officers, *Samuels, Kramer & Co. v. Comm'r*, 930 F.2d 975, 985-86 (2d Cir. 1991), and that Congress intended ALJs to be employees—a judgment that is entitled to significant deference. Indeed, the only court of appeals to have directly addressed this question concluded that ALJs are employees. *Landry*, 204 F.3d at 1132-34.

1. **SEC ALJs Have Only the Authority the SEC Decides to Delegate to Them and Do Not Have the Requisite "Significant Authority" to be Officers**

The totality of the various legal indicia of SEC ALJs' status within the agency reflects that SEC ALJs are "lesser functionaries subordinate to officers of the United States." *Buckley*, 424 U.S. at 126 n.162. The SEC employs ALJs in its discretion and decides what specific functions to delegate to them. *See* 5 U.S.C. § 3105; 15 U.S.C. § 78d-1. Congress has not mandated that the SEC use ALJs to conduct its administrative proceedings; a "[h]earing officer" can be an ALJ, "a panel of Commissioners constituting less than a quorum of the Commission, an individual Commissioner, or any other person duly authorized to preside at a hearing." *See* 17 C.F.R. § 201.101(a)(5). If the Commission decides that an ALJ is to be the hearing officer, then the Chief ALJ selects which of the SEC ALJs will preside. *Id.* § 201.110. Only then would the selected ALJ have the functions of a hearing officer, which the Commission has decided are to be as broad as the APA allows. *Id.* § 201.111.

The Commission retains plenary authority to review any functions it decides to delegate to an ALJ, *see* 15 U.S.C. § 78d-1, and all final agency determinations are those of the Commission, not of its ALJs. While the administrative proceeding is still pending, for example, the Commission may on its own motion order interlocutory review of any matter in the proceeding. 17 C.F.R. § 201.400(a). An ALJ serving as a hearing officer prepares only an "initial decision." *Id*. § 201.360(a)(1). If a party does not seek further review and the Commission does not order review on its own, then the Commission issues an "order of finality," specifying the date on which sanctions, if any, take effect. *Id*. § 201.360(d)(2).

Plaintiffs argue that SEC ALJs exercise "significant authority" because "they are able to issue findings and orders that become final," Pls.' Mot. at 17, and because when there is no further review by the Commission, the ALJs' decisions allegedly are "'deemed the action of the Commission,'" *id.* (quoting 15 U.S.C. § 78d-1(c)). Plaintiffs are wrong because even when there is no petition for review, the ALJ's initial decision has no legal force or effect unless and until the Commission acts; it becomes final only after the Commission decides not to order review on its own initiative and "issue[s] an order that the decision has become final." 17 C.F.R. § 201.360(d)(2); *see also id.* § 201.411(c); *In the Matter of Bebo & Buono*, Exchange Act Release No. 2510, slip op. at 2 n.2 (SEC ALJ April 7, 2015), *available at* http://www.sec.gov/alj/aljorders/2015/ap-2510.pdf (when there is no further review by the Commission, "the Commission must first 'issue an order that the [ALJ's initial] decision has become final'" before any sanctions can take effect and become legally enforceable (alteration in the original) (quoting 17 C.F.R. § 201.360(d)(2)).

An SEC ALJ's "initial decision" represents only the first step in the agency's decision-making process also because if the Commission grants the petition for review or otherwise decides to review the decision, its review is *de novo*. The Commission "may affirm, reverse, modify, [or] set aside" the initial decision, "in whole or in part," and it "may make any findings or conclusions that in its judgment are proper and on the basis of the record." 17 C.F.R. § 201.411(a). The Commission may also "remand for further proceedings," *id.*, "remand . . . for

the taking of additional evidence," or "hear additional evidence" itself. *Id.* § 201.452. Indeed, under the Administrative Procedure Act ("APA"), in reviewing an ALJ's initial decision the agency "retains 'all the powers which it would have in making the initial decision.'" *Nash*, 869 F.2d at 680 (quoting 5 U.S.C. § 557(b)). That the ALJ's decision is only preliminary is also evident in that "[i]n the event a majority of participating Commissioners do not agree to a disposition on the merits, the initial decision shall be of no effect, and an order will be issued in accordance with this result." 17 C.F.R. § 201.411(f). In sum, there is no final, enforceable agency decision until the Commission acts to issue a finality order, a decision on the merits, or an order otherwise concluding the administrative proceeding.

The D.C. Circuit's decision in *Landry v. FDIC* is directly on point. 204 F.3d at 1133-34. There, the D.C. Circuit found that the FDIC's ALJs are not constitutional officers but are employees because they issue only recommended decisions and proposed orders and "can never render the decision of the FDIC"; "final decisions are issued only by the FDIC Board of Directors." *Id.* at 1133; *see also id.* at 1132 (FDIC ALJs possess "purely recommendatory power, *i.e.*, one followed . . . by de novo review"). Similarly here, only the Commission can issue the final decision. Thus, under the reasoning of *Landry*, SEC ALJs are not officers. *See also Free Enterprise*, 561 U.S. at 507 n.10 (unlike PCAOB, many ALJs "possess purely recommendatory powers" or "perform adjudicative rather than enforcement or policymaking functions").

*Freytag* is not to the contrary. There, the Supreme Court, following the Second Circuit's similar ruling in *Samuels, Kramer* 930 F.2d at 985-86, held that special trial judges of the Tax Court are inferior officers, *Freytag*, 501 U.S. at 880. As the D.C. Circuit found in *Landry*, special trial judges are distinguishable from FDIC ALJs because they are able to issue final decisions in certain categories of cases—a fact that "was critical to the [*Freytag*] Court's decision" that they were inferior officers. *Landry*, 204 F.3d at 1134; *see also Freytag*, 501 U.S. at 882 (noting that IRS Commissioner had conceded that special trial judges "act as inferior officers"). Additionally, the special trial judges in *Freytag* have significant discretion in cases over which they do not have final decision-making authority, including, for example, the authority to make factual

14

findings to which the Tax Court is required to defer, whereas the FDIC Board makes its own factual findings. *Landry*, 204 F.3d at 1133. Moreover, they exercise "a portion of the judicial power of the United States" pursuant to statute, *Freytag*, 501 U.S. at 891, which ALJs do not.

Plaintiffs argue that SEC ALJs are more like the special trial judges in *Freytag* than the ALJs in *Landry* because the SEC ALJs purportedly have final decision-making authority when the Commission does not grant review and because factual findings in the SEC ALJ's initial decisions allegedly are reviewed only for "clear error." Pls.' Mot. at 18. But as discussed above, only the Commission can issue the final decision of the agency, even when there is no further review of the ALJ's initial decision. As for the review of the ALJ's factual findings, the provision upon which Plaintiffs rely, 17 C.F.R. § 201.411(b)(2)(ii)(A), concerns the criteria for determining *whether* to grant a petition for review, not the Commission's review of the ALJ's decision on the merits. The list of criteria is not exhaustive, nor is the Commission precluded from granting review when none of the criteria in § 201.411(b) is met. *See also id.* § 201.411(c) (when there is no petition for review, the Commission can order review on its own with only one Commissioner's vote).[6] Once the Commission grants review, its review of the ALJ's factual findings is *de novo*. 17 C.F.R. §§ 201.411(a), 201.452.

Plaintiffs also argue that SEC ALJs' final-decision making authority (or the lack thereof) is not dispositive because SEC ALJs perform many of the same functions performed by special trial judges, as well as by Article I military trial and appellate judges, who are inferior officers. Pls.' Mot. at 16-17 (citing *Weiss v. United States*, 510 U.S. 163 (1994); *Edmond v. United States*,

---

[6] Plaintiffs' suggestion that the Commission's review of issues is more limited than the FDIC Board's review is also wrong. Both the Commission and the FDIC Board have plenary authority over the ALJs' initial or recommended decisions, just as both may decide in their discretion to limit their review. *Compare* 12 C.F.R. § 308.4(c)(1)(the FDIC Board may "limit the issues to be reviewed to those findings and conclusions to which opposing arguments or exceptions have been filed by the parties") *with* 17 C.F.R. § 201.411(d) (the Commission may limit its review to the issues specified in the petition for review or the issues the Commission itself had specified when granting review and may also "at any time prior to issuance of its decision, raise and determine any other matters that it deems material").

520 U.S. 651 (1997); *Ryder v. United States*, 515 U.S. 177 (1995)). But not all judges at any level within any constitutional, statutory, or regulatory scheme possess the same stature or exercise the same powers. Just as having the final decision-making authority on behalf of an Executive Branch agency would not necessarily be sufficient to render a government employee an inferior officer, *see, e.g., Tucker*, 676 F.3d at 1133, whether a particular kind of judge is an inferior officer similarly does not rise or fall on whether he or she performs, in the most general sense, the same kinds of tasks as judges who are inferior officers.[7]

### 2. The History of the ALJ System, the ALJs' Appointments, and the Placement of ALJs Within the Competitive Service Confirm that Congress Intended ALJs to be Employees

To the extent that there is any doubt that ALJs are employees rather than officers, this Court should defer to Congress's long-standing judgment—as reflected in Congress's specified method of appointing ALJs as well as its placement of ALJs within the competitive service system—that ALJs are employees. *See Weiss*, 510 U.S. at 194 (Souter, J., concurring) ("in the presence of doubt" whether military judges are principal or inferior officers, and given that the method Congress chose for selecting them shows that neither Congress nor the President thought military judges were principal officers, "deference to the political branches' judgment is appropriate"). The Constitution assigns to Congress the authority to determine, in the first instance, whether a position it creates is that of an officer or of an employee, *see* U.S. Const. art.

---

[7] The military appellate judges in *Edmond*, for example, are distinguishable from SEC ALJs because they decide "those court-martial proceedings that result in the most serious sentences," including those "in which the sentence, as approved, extends to death, dismissal ..., dishonorable or bad-conduct discharge, or confinement for one year or more." 520 U.S. at 662. As the Supreme Court noted, "[t]hey must ensure that the court-martial's finding of guilt and its sentence are 'correct in law and fact,' which includes resolution of constitutional challenges," and "unlike most appellate judges, they are not required to defer to the trial court's factual findings." *Id.* As for the military trial judges in *Weiss*, they "rule[] on all legal questions, and instruct [] court-martial members regarding the law and procedures to be followed." 510 U.S. at 167. They also render final and unreviewable decisions in a significant category of cases, such as those with the consent of the accused or when an order or rule amounts to a finding of not guilty. *Id.* at 168; 10 U.S.C. §§ 816(1)(B), (2)(C), 851(d), 862(a)(1). SEC ALJs do not possess the type of authority exercised by the military appellate and trial judges.

II, § 2, cl. 2, and "[t]hat constitutional assignment to Congress counsels judicial deference," *In re Sealed Case*, 838 F.2d 476, 532 (D.C. Cir.) (Ginsburg, J., dissenting), *rev'd sub nom. Morrison v. Olson*, 487 U.S. 654 (1988). Congress's judgment "is owed a large measure of respect—deference of the kind courts accord to myriad constitutional judgments" made by the Legislative Branch. *Id.*[8]

Congress is presumed to know the requirements of the Appointments Clause. *E.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 697 (1979). In fact, when Congress created the position of the modern ALJ in 1946, the method of appointment generally determined the status—employee or officer—of the position. At that time, the Supreme Court had long characterized appointments pursuant to the methods prescribed in the Appointments Clause as a "well established definition of what it is that constitutes [an officer of the United States]." *United States v. Mouat*, 124 U.S. 303, 307 (1888); *see also United States v. Smith*, 124 U.S. 525, 531-32 (1888); *Germaine,* 99 U.S. at 511; *Wise v. Withers*, 7 U.S. 331, 336 (1806). Lower courts, including the Second Circuit, adhered to this precedent. *See McGrath v. United States*, 275 F. 294, 300-01 (2d Cir. 1921); *Hare v. Hurwitz*, 248 F.2d 458, 461 (2d Cir. 1957). Yet Congress specified in § 11 of the APA that it is the "agency"—not the President, the Department head, or the judiciary—that appoints ALJs. Pub. L. No. 79-404, 60 Stat. 237, 244 (1946) ("There shall be appointed by and for each agency as many qualified and competent examiners as may be necessary . . . ."); *see* 5 U.S.C. § 3105.

In the seven decades since the ALJs' creation, Congress has not seen fit to change the method of appointment of ALJs. And Congress clearly knows how to properly appoint officers because in Title 5 of the U.S. Code, which governs government organization and employees,

---

[8] Of course, as then-Judge Ruth Bader Ginsburg noted in her dissenting opinion in *In re Sealed Case*, Congress's "intention [as reflected in the chosen mode of appointment] alone is not dispositive of the constitutional issue, for it is common ground that Congress does not have the final say." 838 F.2d at 532 (Ginsburg, J., dissenting) (quotation omitted). But "judicial review must fit the occasion," and in a "debatable" case, "the fully rational congressional determination" merits acceptance. *Id.*

Congress defines an "officer" to mean "a justice or judge of the United States and an individual who is required by law to be appointed in the civil service by" the President, a Court of the United States, "the head of an Executive agency," or the Secretary of a military department. *Id.* § 2104. In contrast, an "employee" other than an officer may be "appointed in the civil service by . . . an individual who is an employee under this section." *Id.* § 2105. If there is any doubt whether ALJs are officers, the way in which Congress provided for their appointment confirms that they are not.

Congress's long-standing judgment that ALJs are not inferior officers is also reflected in the fact that since creating the ALJ positions, Congress has placed ALJs—along with tens of thousands of other federal employees—in the competitive service, which is the most basic category within the civil service system. *See Myers*, 272 U.S. at 173; 5 U.S.C. § 2102. The Supreme Court's examination of the Civil Service Commission's regulations of hearing examiners—the precursor of ALJs—was also consistent with the view that ALJs bear no indicia of constitutional officers. *See Ramspeck v. Fed. Trial Exam'rs Conference*, 345 U.S. 128, 130 (1953).

Hearing examiners, like other government employees of that time period, were originally subject to the Classification Act of 1923 and depended on their agency's ratings for compensation and promotion. *Id*. In 1946, due to complaints about hearing examiners' perceived partiality when conducting administrative hearings, Congress enacted the APA to "curtail and change the practice of embodying in one person or agency the duties of prosecutor and judge," while also introducing greater uniformity of procedure and standardization of administrative practice among the diverse agencies. *See Wong Yang Sung v. McGrath*, 339 U.S. 33, 41 (1950). To "separat[e] adjudicatory functions and personnel from investigative and prosecution personnel in the agencies," Congress placed hearing examiners under the jurisdiction of the Civil Service Commission in a merit-based civil service system for federal employees, and vested the Civil Service Commission with control of the ALJs' compensation, promotion, and tenure. *See Ramspeck*, 345 U.S. at 131. Section 11 of the APA specified, for example, that hearing

examiners were removable by the employing agency only for "good cause" established and determined by the Civil Service Commission. 60 Stat. at 244.

In enacting these measures to enhance hearing examiners' independence in the agencies' administrative process, Congress gave no indication that it meant to elevate their status above that of the investigative and prosecution personnel of the agency. To the contrary, Congress explicitly "retained the examiners as classified Civil Service employees." *Ramspeck*, 345 U.S. at 133. Thus, on the question of whether hearing examiners' tenure protection precluded an agency from removing them due to a reduction in force, the Supreme Court said that "Congress intended to provide tenure for the examiners in the tradition of the Civil Service Commission," namely that "[t]hey were not to be paid, promoted, or discharged at the whim or caprice of the agency or for political reasons." *Id.* at 142. This meant that hearing examiners could be subject to the agency's reduction in force, like other employees. *Id.* at 140-41. Similarly, the Court also found that the Civil Service Commission could set various salary grades to reflect the competence and experience of the examiners in each grade—again, like others in the civil service. *Id.* at 136.

Today, OPM, one of the agencies that assumed some of the functions of the Civil Service Commission, is responsible for promulgating rules relating to ALJs and for administering and overseeing the competitive process by which ALJs are screened for positions across federal agencies. An agency may appoint an individual to an ALJ position only with prior approval of OPM, except when it makes its selection from the list of eligible ALJs provided by OPM. 5 C.F.R. § 930.204. The MSPB, another agency that also assumed some of the functions of the Civil Service Commission, has jurisdiction over major personnel actions against ALJs. *See* 5 U.S.C. § 7521; 5 C.F.R. §§ 1201.137 *et seq*. The MSPB process is part and parcel of the Civil Service Reform Act's comprehensive remedial scheme for all major personnel actions against federal employees. *Gray v. Office of Pers. Mgmt.*, 771 F.2d 1504, 1510 (D.C. Cir. 1985) (refusing "to confer special status on ALJs beyond that expressly provided by Congress"). Congress enacted the CSRA to overhaul the civil service system and create an "elaborate new framework for evaluating adverse personnel actions  against federal employees." *United States v. Fausto*, 484

U.S. 439, 443 (1988)  (quotation and alteration omitted). In creating that comprehensive scheme, Congress provided no special remedial routes for ALJs to challenge most personnel disputes, even when the ALJ alleges that the employing agency's action has affected his or her decisional independence. *See, e.g.*, *Mahoney*, 721 F.3d at 636-37; *Brennan v. HHS*, 787 F.2d 1559, 1562-63 (Fed. Cir. 1986). Although Congress required that an ALJ's removal, suspension, reductions in grade or pay, and furlough of certain length must be based on "good cause" established and determined by the MSPB, 5 U.S.C. § 7521; *see also id.* § 1305, whereas for other federal employees, those adverse personnel actions may be taken by their agencies in the first instance with the right to appeal to the MSPB, *id.* §§ 7512, 7701, this process is still part of the CSRA's remedial scheme. In other words, ALJs go to the same adjudicative body for employment disputes, the MSPB, as other federal employees.

Also telling is the fact that ALJs are "subordinate to [the employing agency] in matters of policy and interpretation of law." *Nash*, 869 F.2d at 680; *see Ho v. Donovan*, 569 F.3d 677, 682 (7th Cir. 2009). This is consistent with the concept that "civil servants are not thought to be the President's policymakers." *In re Sealed Case,* 838 F.2d at 497. In contrast with ALJs, who are competitive service employees hired from a civil service examination, those employees who occupy confidential, policy-determining or policy-making positions in the "excepted service" cannot appeal adverse personnel actions to the MSPB and may be removed without cause. 5 U.S.C. § 7511(b)(2).[9]

In sum, SEC ALJs are not constitutional officers but are like other federal employees. And, at a minimum, Congress views them as standing in a different constitutional footing than

---

[9] *See Stanley v. U.S. Dep't of Justice*, 423 F.3d 1271, 1274 (Fed. Cir. 2005) (MSPB has no jurisdiction to hear claims by U.S. Trustees who were removed before the expiration of their terms, because the position of U.S. Trustee was classified as confidential and policy-making and because "inferior officers may be removed before the end of their [] term"); *see also* 5 U.S.C. § 2302(a)(2)(B)(i) ("covered position" for purposes of appeal of personnel actions does not include those "excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character").

inferior officers, who "determine[] the policy and enforce[] the laws of the United States." *Free Enterprise*, 561 U.S. at 484; *see id.* at 506-07 (noting that "[s]enior or policymaking positions in government may be excepted from the competitive service to ensure Presidential control," and emphasizing that "nothing in [the Court's] opinion, therefore, should be read to cast doubt on the use of what is colloquially known as the civil service system within independent agencies").

### B. Plaintiffs Are Not Likely to Succeed On Their Article II Challenge to ALJs' Tenure Protections

Plaintiffs also challenge the removal framework for ALJs. But they do so only in passing, devoting a scant few sentences to the argument that the framework is unconstitutional under *Free Enterprise* because ALJs are inferior officers who are insulated from Presidential removal by more than one layer of tenure protection. Pls.' Mot. at 13-14. This skeletal argument merits only a brief response. The best place to start is the recent opinion in *Duka v. SEC*, No. 15-cv-357 (S.D.N.Y. April 15, 2015), in which the court upheld the constitutionality of the ALJ removal framework. It correctly reasoned that "SEC ALJs perform solely adjudicatory functions, and are not engaged in policymaking or enforcement," thus, there is "no basis for concluding . . . that the statutory restrictions upon the removal of SEC ALJs are so structured as to infringe the President's constitutional authority." *Id.*, slip op. at 20 (quotations omitted).

Plaintiffs assail the court's conclusion in *Duka* because, they argue, it "would create an unprecedented category of Article II judicial officers unsupervised by the Executive Branch of government." Pls.' Mot. at 13 n.6. Not so. As explained above, ALJs are not unsupervised, but rather must answer to the Executive Branch through their agency and the MSPB.

In any case, the question to be answered with respect to any removal claim is whether the President retains adequate control over executive authority, *Morrison*, 487 U.S. at 689-90, not whether the ALJs are "unsupervised by the Executive Branch," Pls.' Mot. at 13 n.6. The President retains adequate control over executive authority: 1) as the *Duka* court explained, ALJs exercise only limited executive power in the form of adjudicatory authority; they do not wield broad rulemaking or enforcement authority; 2) ALJs play a part in a process over which the

Commission retains ultimate control, 17 C.F.R. §§ 201.360, 201.410 , 201.411, 201.452, and there is no doubt the President exercises constitutionally adequate control over the Commission, *see Humphrey's Executor v. United States*, 295 U.S. 602 (1935); 3) ALJs enjoy ordinary (good cause) tenure protection, 5 U.S.C. § 7521, not the kind of extraordinary tenure protection that was invalidated by the Supreme Court in *Free Enterprise*, 561 U.S. at 503; and, 4) they have a long history of use and acceptance, which establishes a gloss on the Constitution, *Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981). Plaintiffs' removal argument fails.

## III. PLAINTIFFS WILL NOT BE IRREPARABLY HARMED ABSENT AN INJUNCTION

Plaintiffs cannot establish that they will be irreparably harmed if the Court declines their request to issue emergency injunctive relief. As noted in the introduction, declining to enjoin the SEC's ongoing proceeding will result in nothing more drastic than litigation in an administrative forum. Notwithstanding the pedestrian nature of the consequences of denying this motion, Plaintiffs posit that three allegedly irreparable harms are in the offing. None withstands scrutiny.

First, Plaintiffs' argument that their mere participation in a purportedly unconstitutional administrative proceeding constitutes irreparable harm, Pls.' Mot. at 19, is without merit. Even if an alleged violation of certain personal constitutional rights may trigger a presumption of irreparable harm, *e.g.*, *Statharos v. N.Y. City Taxi and Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999),[10] that principle does not extend to alleged violations of provisions of the Constitution that establish the structure of the Government. *Public Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir. 1987) (cases holding that a constitutional deprivation amounts to irreparable harm "are almost entirely restricted to cases involving alleged

---

[10] Even in the context of personal constitutional rights, the Second Circuit has declined to adopt a *per se* rule that irreparable harm can simply be presumed, rather than proven. *Amandola v. Town of Babylon*, 251 F.3d 339, 343 (2d Cir. 2001) ("[T]his Court has not spoken with a single voice on the issue of whether irreparable harm may be presumed with respect to complaints alleging the abridgement of First Amendment rights." (citing cases)); *Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir. 1988) (requiring a finding of irreparable harm in First Amendment case); *Latino Officers Ass'n v. Safir*, 170 F.3d 167, 171 (2d Cir. 1999) (same).

infringements of free speech, association, privacy or other rights as to which temporary deprivation is viewed of such qualitative importance as to be irremediable by any subsequent relief"); *see also Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989) ("Constitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction."). To the contrary, a party seeking to enjoin alleged structural constitutional violations must establish proof of an irreparable harm separate from the constitutional violation itself. *E.g.*, *Burroughs v. County of Nassau*, No. 13-cv-6784, 2014 WL 2587580, at *9 (E.D.N.Y. June 9, 2014); *Smith v. Fredrico*, No. 12-cv-04408, 2013 WL 122954, at *6, (E.D.N.Y. Jan. 8, 2013); *EEOC v. Local, 638*, No. 71 Civ. 2877, 1995 WL 355589, at *6-7 (S.D.N.Y. June 7, 1995); *cf. Galvin v. N.Y. Racing Ass'n*, 70 F. Supp. 2d 163, 190 (E.D.N.Y. 1998) ("[A] violation of due process rights . . . is insufficient to establish irreparable harm").

This principle applies with particular force where, as alleged here, the alleged harm is the mere participation in an administrative proceeding, the outcome of which will be subject to judicial review. *See Fort v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 375 F. App'x 109, 111 (2d Cir. 2010) (rejecting "plaintiffs' contention that trial itself constituted irreparable harm" where "appeals were available" and "the claimed injury of [an adverse decision] was both speculative and redressable"); *Aref v. United States*, 452 F.3d 202, 206 (2d Cir. 2006) (denying mandamus seeking to halt criminal proceeding that allegedly violated due process rights, as any such constitutional harms can be remedied by judicial review following an appeal, and a reversal of the decision below).

Second, Plaintiffs argue that they will be irreparably harmed because they will have to expend resources to litigate the administrative proceeding. Pls.' Mot. at 20. Supreme Court precedent forecloses this argument: "[T]he expense and annoyance of litigation is 'part of the social burden of living under government[,]' . . . [and] [m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *FTC v. Standard Oil*, 449 U.S. 232, 244 (1980); *see also Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 23-24 (1974); *Petroleum Exploration v. Public Serv. Comm'n*, 304 U.S. 209, 222 (1938).

Third, Plaintiff Tilton argues that she will be irreparably harmed if she does not prevail in the administrative proceeding, as her business reputation and, consequently, her business, will be damaged. Pls.' Mot. at 20-21. But whether or not she will prevail in the administrative proceeding is a matter of speculation, and speculative harms cannot be the basis for a preliminary injunction. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (noting that preliminary relief cannot be founded on "remote or speculative" harms). Moreover, reputational harm provides an inadequate basis for a finding of irreparable harm as a matter of law. *See Sampson v. Murray*, 415 U.S. 61, 91 (1974) (concluding that reputational damage from an agency's alleged failure to follow necessary procedures in disciplining and discharging an employee "would be fully corrected by an administrative determination requiring the agency to conform to the applicable regulations").

Notably, Plaintiff Tilton's claims of reputational and business harm are logically flawed, given her suggestion that the Commission should proceed against her in a federal district court. Pls.' Mot. at 3, 21. The purported threat to Tilton's reputation and business from an adverse ruling would be the same if the SEC were to bring a public proceeding in federal district court or if it were to proceed administratively.

## IV. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST ARE IN THE GOVERNMENT'S FAVOR

Both the public interest and the balance of equities support denying Plaintiffs' motion. An injunction would doubly harm the public's interest. First, it would thwart the SEC in its efforts to act as "a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). Interference with the SEC's enforcement activity would be particularly harmful to the public's interest in this matter because there is no indication that the activity at the center of the administrative proceeding has ceased. Indeed, as the Court observed in the *Duka* case, No. 15-cv-357 (S.D.N.Y. April 15, 2015), even had the Court not found that the plaintiff was unlikely to prevail on the merits, the Court nonetheless "would likely [have found] that she failed to

24

demonstrate that the public interest weighs in favor of granting a preliminary injunction," *id.*, slip op. at 15 n.13, in light of the vital role the SEC plays in "protect[ing] investors and maintain[ing] the integrity of the securities markets," *United States v. Wittig*, 575 F.3d 1085, 1105 (10th Cir. 2009). Second, an injunction would render meaningless the exclusive remedial scheme mandated by Congress. *CleanTech Innovs.*, 2012 WL 345902, at *6 ("Adhering to this statutory scheme . . . promote[s] the orderly regulation . . . that Congress contemplated when it enacted the Exchange Act" and is "clearly in the public interest."). The balance of equities also favors denying the injunction because nothing counterbalances these two harms, as Plaintiffs would not be irreparably harmed by a denial of their motion.

Plaintiffs argue that the SEC will not be harmed by a delay because its investigation has spanned several years. Pls.' Mot. at 21. But basic logic dictates that a thorough investigation does not eliminate the need for expedition once it has been determined that there may be ongoing securities law violations. Plaintiffs also maintain that the SEC could bring an enforcement action in federal court, and that it is in the Commission's interest to resolve the constitutional arguments raised by Plaintiffs. *Id.* But forcing the Commission to sue in federal court would strip the agency of the enforcement discretion afforded to it by Congress. As to Plaintiffs' last argument, there is no need to freeze things in place because there is no constitutional violation, and in any case, no reason to resolve such issues separately from the exclusive remedial scheme which provides for judicial review in the court of appeals.

## CONCLUSION

Defendant respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.

Dated:  April 30, 2015                              Respectfully submitted

PREET BHARARA                              BENJAMIN MIZER
United States Attorney                          Principal Deputy Assistant Attorney General

JEANNETTE A. VARGAS
Assistant United States Attorney
U.S. Attorney's Office
Southern District of New York
86 Chambers Street, 3rd Fl.
New York, NY 10007
Telephone: (212) 637-2678
Facsimile:  (212) 637-2702

KATHLEEN R. HARTNETT
Deputy Assistant Attorney General

JENNIFER D. RICKETTS
Director, Federal Programs Branch

SUSAN K. RUDY
Assistant Director, Federal Programs Branch

/s/ *Jean Lin*
JEAN LIN
JUSTIN M. SANDBERG
ADAM A. GROGG
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
20 Mass. Ave., N.W., Rm. 7302
Washington, DC 20001
Phone: (202) 514-3716
Fax: (202) 616-8202
Email: jean.lin@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2015, I electronically filed a copy of the foregoing.

Notice of this filing will be sent via email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Jen Lin*
JEAN LIN