```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUN 3 0 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
LYNN TILTON, PATRIARCH PARTNERS,           :
LLC, PATRIARCH PARTNERS VIII, LLC,         :
PATRIARCH PARTNERS XIV, LLC and            :
PATRIARCH PARTNERS XV, LLC,                :
                                                          :
                              Plaintiffs,   :            15-CV-2472 (RA)
                                                          :
                                                          :            OPINION & ORDER
            -v-                                           :
                                                          :
SECURITIES AND EXCHANGE                    :
COMMISSION,                                 :
                                                          :
                              Defendant.    :
                                                          :
----------------------------------------------------------X

RONNIE ABRAMS, United States District Judge:

On March 30, 2015, the Securities and Exchange Commission ("SEC" or "Commission")

commenced an administrative cease-and-desist proceeding against Plaintiffs Patriarch Partners,

LLC, its founder and CEO Lynn Tilton, and affiliated companies, alleging that they violated the

federal securities laws.  The SEC has designated an Administrative Law Judge ("ALJ") as the

hearing officer in the administrative proceeding against Plaintiffs.  Like in a number of other

recent cases which sought to challenge the SEC's decision to proceed in an administrative rather

than judicial forum, Plaintiffs bring this action to enjoin the administrative proceeding.  They

contend that the scheme for appointing and removing the SEC's ALJs violates the Appointments

Clause of the U.S. Constitution and that the ALJ designated as their hearing officer thus has no

lawful authority to preside over their case.  Plaintiffs now move this Court to issue a preliminary

injunction barring the SEC from continuing its administrative proceeding against them, pending

resolution of the instant matter.

The first question this Court must address in deciding whether to halt the ongoing administrative action against Plaintiffs is whether it has the power—or jurisdiction—to do so. Ultimately, I conclude, it does not. Congress has created a remedial scheme applicable to claims such as Plaintiffs', pursuant to which the exclusive avenue of review of an ALJ's decisions is through the administrative process, with subsequent judicial review by a federal court of appeals. Plaintiffs are therefore obliged to further litigate their claims in the Commission's administrative forum and seek review, if they so choose, in a circuit court of appeals. Because this Court lacks subject matter jurisdiction to decide the merits of Plaintiffs' constitutional claims, their motion is denied and the Complaint must be dismissed.

## BACKGROUND

With the passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Congress expanded the SEC's authority to impose civil penalties in administrative proceedings where such penalties could previously only be sought against non-regulated persons or entities in federal district court. *See* Pub. L. No. 111-203, § 929P(a), 124 Stat. 1376, 1862-64 (2010); *see also Duka v. U.S. SEC*, No. 15-CV-0357 (RMB), 2015 WL 1943245, at *2 (S.D.N.Y. Apr. 15, 2015); *Bebo v. SEC*, No. 15-C-3, 2015 WL 905349, at *1 (E.D. Wis. Mar. 3, 2015) (with Dodd-Frank, "Congress made the SEC's authority in administrative penalty proceedings 'coextensive' with its authority to seek penalties in federal court" (quoting H. Rep. No. 111-687, at 78 (2010)). This is one of several recent cases attacking the SEC's decision to bring an ever increasing number of enforcement actions within its own administrative scheme, rather than in federal court.

2

## I.      SEC Administrative Proceedings Generally

SEC administrative proceedings "shall be presided over by the Commission or, if the Commission so orders, by a hearing officer." 17 C.F.R. § 201.110. "Hearing officers" are defined to include administrative law judges. 17 C.F.R. § 201.101(a)(5).

Unless the Commission directs otherwise, an ALJ "shall prepare an initial decision in any proceeding" over which he or she presides. 17 C.F.R. § 201.360(a)(1). The Commission may on its own initiative or on a party's petition review the initial decision. 17 C.F.R. § 201.411(b), (c). If no petition for review is filed and the Commission does not review on its own initiative, the Commission "will issue an order that the decision has become final . . . ." 17 C.F.R. § 201.360(d)(2).

Congress has established a scheme for judicial review of Commission actions, providing that a "person aggrieved by a final order of the Commission . . . may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit . . . . On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part." 15 U.S.C. § 78y(a).[1]

## II.      SEC Proceedings Against Plaintiffs

Plaintiffs allege that the SEC began investigating them "at least as early as" December 2009. Compl. ¶ 5. On March 30, 2015, the SEC issued an Order Instituting Public Administrative and Cease-and-Desist Proceedings ("OIP"), which commenced administrative proceedings against Plaintiffs pursuant to the Investment Advisors Act and the Investment Company Act. *Id.* at ¶ 5; Gunther Decl. Ex. 1. By Order of the Chief Administrative Law Judge,

---

[1] The various review provisions in the federal securities laws are materially similar. *See* 15 U.S.C. §§ 77i(a), 80a-42(a), 80b-13(a).

the administrative proceeding is to be presided over by Administrative Law Judge Carol Fox Foelak. *In the Matter of Lynn Tilton et al.*, Administrative Proceedings Rulings Release No. 2494 (SEC April 6, 2015), *available at* http://www.sec.gov/alj/aljorders/2015/ap-2494.pdf.

### III.   The Instant Action

In this action, Plaintiffs seek to avoid "being compelled to submit to an unconstitutional proceeding . . . ." Compl. ¶ 6. Plaintiffs' argument is rooted in the Appointments Clause of Article II of the Constitution. Article II provides, in relevant part, that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2. Plaintiffs contend first that since ALJs are not appointed by the SEC Commissioners themselves, *i.e.*, the head of a department, the ALJ appointments scheme is unconstitutional. Pls.' Br. at 13-14. Second, Plaintiffs argue that under the Supreme Court's decision in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), an "inferior officer" cannot, under Article II, be insulated from Presidential removal by more than one layer of tenure protection. Pls.' Br. at 13. Since the ALJs cannot be removed except for "good cause," 5 U.S.C. § 7521(a), and the SEC Commissioners themselves cannot be removed "except for inefficiency, neglect of duty, or malfeasance in office," *Free Enter.*, 561 U.S. at 487 (citation omitted), Plaintiffs maintain that the two layers of tenure protection created by the ALJ removal scheme is unconstitutional. Pls.' Br. at 2.

The SEC disagrees. As an initial matter, the SEC argues that this Court lacks subject matter jurisdiction over Plaintiffs' claims, since Plaintiffs must raise their claims through the administrative remedial scheme established by Congress and seek judicial review, if any, before a court of appeals. Opp. at 6-11. The SEC further contends that its ALJs are not "inferior officers"

4

under the Constitution but mere "employees," the hiring and firing of whom is not governed by Article II. *Id.* at 11-22. Finally, the SEC argues that Plaintiffs have not shown irreparable harm sufficient to warrant a preliminary injunction, nor that the balance of equities or the public interest favor granting a preliminary injunction. *Id.* at 22-25.

## DISCUSSION

The threshold issue in this case—and, ultimately, the dispositive one for purposes of the present motion—is whether subject matter jurisdiction exists for this Court to consider Plaintiffs' claims. Plaintiffs, as the party asserting federal subject matter jurisdiction, bear the burden of proving by a preponderance of the evidence that it exists. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Federal courts are courts of limited jurisdiction. *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002). "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider." *Bowles v. Russell*, 551 U.S. 205, 212 (2007). As noted above, the federal securities laws provide that a person aggrieved by an order of the Commission "may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit . . . ." 15 U.S.C. § 78y(a)(1); *see also* 15 U.S.C. §§ 77i(a), 80a-42(a), 80b-13(a). The jurisdictional question here is whether this "statutory scheme of administrative and judicial review provides the exclusive means of review" for Plaintiffs' claims, thereby precluding Plaintiffs from pursuing those claims in district court. *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132 (2012).

The Second Circuit has held that "[r]eview provisions such as this generally preclude de novo review in the district courts, requiring litigants to bring challenges in the Court of Appeals or not at all." *Altman v. U.S. SEC*, 687 F.3d 44, 45-46 (2d Cir. 2012) (citation omitted); *see also*

5

*Free Enter.*, 561 U.S. at 489 ("Generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive.") (citation omitted).  The Supreme Court has instructed, however, that a statutory review scheme does "not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'"  *Free Enter.*, 561 U.S. at 489 (alteration in original) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994)).

    In *Thunder Basin*, a case involving a statutory review scheme for challenges to agency enforcement actions under the Mine Act, the Supreme Court established a framework to determine whether a statutory review scheme precludes district court jurisdiction over pre-enforcement challenges to an administrative action.  510 U.S. at 212-213.  Utilizing this framework, the Supreme Court in *Free Enterprise* stated that "we presume that Congress does not intend to limit jurisdiction [1] if 'a finding of preclusion could foreclose all meaningful judicial review'; [2] if the suit is 'wholly collateral to a statute's review provisions'; and [3] if the claims are 'outside the agency's expertise.'"  *Free Enter.*, 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 212-213).  The first factor, the court noted in *Altman v. U.S. SEC*, "seems most important; . . . that a plaintiff's 'constitutional claims . . . can be meaningfully addressed in the Court of Appeals' trumps other considerations such as that administrative review is conducted internally rather than independently and that the reviewing body lacks expertise in reviewing constitutional questions."  768 F. Supp. 2d 554, 559 (S.D.N.Y. 2011) (quoting *Thunder Basin*, 510 U.S. at 215), *aff'd*, 687 F.3d 44 (2d Cir. 2012).

    In recent months, district courts have reached different conclusions as to whether they have jurisdiction over claims similar to the ones Plaintiffs raise here, or whether jurisdiction is precluded

6

by the statutory scheme.   *Compare, e.g.*, *Hill v. SEC*, No. 15-CV-1801 (LMM) (N.D. Ga. June 8,

2015), ECF No. 28 (district court has jurisdiction) and *Duka v. U.S. SEC*, No. 15-CV-0357 (RMB),

2015 WL 1943245 (S.D.N.Y. Apr. 15, 2015) (same) *with Spring Hill Capital Partners, LLC v.*

*SEC*, No. 15-CV-4542 (ER) (S.D.N.Y. June 26, 2015), ECF No. 24 (district court lacks

jurisdiction) and *Bebo*, 2015 WL 905349 (same).   Ultimately, this Court finds the arguments

against jurisdiction more persuasive, and concludes that Plaintiffs have not established that

Congress intended to exclude their claims from the designated statutory review scheme.

### A.  Meaningful Judicial Review

In *Elgin v. Dep't of Treasury*, a case addressing whether the Civil Service Reform Act

provided the "exclusive avenue to judicial review" through an administrative process and appeal

to a circuit court, the Supreme Court held that where the statutory scheme provided for "review in

the Federal Circuit, an Article III court fully competent to adjudicate petitioners' [constitutional]

claims," meaningful judicial review existed.   132 S. Ct. at 2130, 2137.   This was true, the Court

stated, regardless of whether the administrative tribunal itself had the authority to consider the

constitutional claims in the first instance.   *Id.* at 2136-37.   Similarly, in *Thunder Basin*, on which

*Elgin* relied, the Court held that even if the agency could not consider the petitioner's constitutional

claims, they could still be "meaningfully addressed in the Court of Appeals," in which the statutory

scheme had vested judicial review.   510 U.S. at 215.   It is undisputed that the statutory review

scheme here similarly provides for review in a circuit court of appeals, and that Plaintiffs' claims

may ultimately be heard in that forum.   This case thus "does not present the 'serious constitutional

question' that would arise if an agency statute were construed to preclude all judicial review of a

constitutional claim."   *Thunder Basin*, 510 U.S. at 215 n.20 (citing *Bowen v. Michigan Acad. of*

*Family Physicians*, 476 U.S. 667, 681 n.12 (1986)).   Rather, federal appellate court review is

7

expressly available to Plaintiffs, and this Court is not persuaded that such review would not be "meaningful."

According to Plaintiffs, meaningful review is not available because (1) requiring them to litigate their claims through administrative channels in the first instance will force them to undergo the very proceedings they claim are unconstitutional; (2) pursuing their claims administratively will result in "significant and irreparable injury"; (3) their claims cannot be raised effectively in an administrative proceeding; and (4) the ALJ and the Commission will be "inherently conflicted" in assessing their claims.   None of these arguments are availing.

*First*, Plaintiffs' primary contention is that requiring them to litigate before the ALJ in the first instance will "force[] [them] to endure the very proceeding that [they] allege[] is inherently unconstitutional."  Pls.' Br. at 11.   The court in *Duka* agreed, concluding that, if the plaintiff were required to await the conclusion of administrative proceedings before seeking judicial review, her "claim for injunctive and declaratory relief would likely be moot at that stage because the allegedly unconstitutional Administrative Proceeding would have already taken place."   2015 WL 1943245, at *5; *see also Hill*, slip op. at 15.  This Court respectfully declines to adopt this reasoning.

Such an exception to the enforceability of statutory review schemes could swallow the schemes themselves; indeed, any arguably plausible claim in district court that an administrative proceeding should be enjoined as unconstitutional could confer jurisdiction and thus thwart Congress' intent to the contrary.   Although Plaintiffs are understandably frustrated that they cannot, in their view, obtain meaningful judicial review of the constitutionality of the proceedings they challenge prior to "endur[ing]" those very proceedings, Pls.' Br. at 11, this posture is not uncommon in our judicial system, nor a burden peculiar to this case.   Oftentimes in our system, a

8

party challenging the legality of the very proceeding or forum in which she is litigating must "endure" those proceedings before obtaining vindication. *See, e.g., Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108-9 (2009) ("We routinely require litigants to wait until after final judgment to vindicate valuable rights, including rights central to our adversarial system."); *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 268 (2d Cir. 1999) ("non-immunity based motions to dismiss for want of subject matter jurisdiction are not ordinarily entitled to interlocutory review"); *Germain v. Connecticut Nat. Bank*, 930 F.2d 1038, 1040 (2d Cir. 1991) (order denying motion to strike jury demand not immediately appealable; if the plaintiff has no right to a jury trial, the defendant may raise that issue on appeal from an adverse final judgment, and if the appellate court agrees, it will remand for a nonjury trial, thus vindicating the defendant's right); *D'Ippolito v. Am. Oil Co.*, 401 F.2d 764, 764-65 (2d Cir. 1968) (order transferring case to another district not immediately appealable); *Rosen v. Sugarman*, 357 F.2d 794, 796 (2d Cir. 1966) (order denying an application for disqualification of a judge not immediately appealable).[2] As Judge Kaplan noted in *Chau v. U.S. SEC*, criminal defendants "cannot interrupt their prosecutions and trials" to appeal perceived errors but must "await conviction and final judgment. Delaying judicial review does not violate these criminal defendants' due process rights any more than requiring plaintiffs to await final adjudication before the SEC would violate theirs." No. 14-CV-1903 (LAK), 2014 WL 6984236, at *9 (S.D.N.Y. Dec. 11, 2014).

Indeed, in the very cases the parties rely on in their arguments on the merits, Appointments Clause challenges similar to Plaintiffs' were raised either for the first time before the court of

---

[2] To be sure, this is not the case in every instance—there are exceptions where, rather than "endure" the normal course of proceedings, interlocutory review may be had. 28 U.S.C. § 1292(a), for instance, authorizes immediate appeals of interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions" in order to "permit[] litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). As discussed below, however, the Court is not persuaded that Plaintiffs will suffer irreparable harm simply by litigating their claims within the statutory review scheme.

appeals after an administrative proceeding or litigated before the agency and raised again on appeal—as Plaintiffs are authorized by statute to do here.  In *Landry v. FDIC*, for example, the initial proceedings were presided over by an FDIC ALJ.   204 F.3d 1125, 1128 (D.C. Cir. 2000). The petitioner moved, before the ALJ, to disqualify the ALJ under the Appointments Clause.   Br. for Petitioner, *Landry v. FDIC*, No. 99-1230, 1999 WL 34833873, at *3 (D.C. Cir. Sept. 7, 1999). The ALJ issued a Recommended Decision against the petitioner, which was adopted by the FDIC's Board of Directors, and which, in the Board's own order, addressed the Appointments Clause issue.   *Id.* at *4; *Landry*, 204 F.3d at 1133 n.2.   Subsequently, the petitioner appealed to the District of Columbia Circuit, which held that FDIC ALJs are not "inferior officers" for purposes of the Appointments Clause.   *Landry*, 204 F.3d at 1132-1134.   There is no reason why this procedure—which involved the petitioner undergoing the very administrative proceeding he was challenging before obtaining judicial review—provided anything less than meaningful review of a constitutional question nearly identical to the one at issue here.

Similarly, in *Freytag v. C.I.R.*, the proceedings were before the Tax Court, where the petitioner's case was assigned to a Special Trial Judge ("STJ").   501 U.S. 868, 871 (1991).   The STJ issued a ruling against the petitioners, which was adopted by the Tax Court's Chief Judge. *Id.* at 871-72.   Petitioners appealed to the Fifth Circuit and raised for the first time their contention that the STJs held their positions in violation of the Appointments Clause.   *Id.* at 872.   Petitioners ultimately appealed to the Supreme Court, which held that while STJs were "inferior officers" under Article II, not merely "employees," their appointments scheme did not run afoul of the Constitution.   *Id.* at 880-92.   As is the case with *Landry*, the fact that the judicial review of the constitutionality of those proceedings occurred after the administrative proceedings concluded did not render such review meaningless.   To the contrary.   Plaintiffs here offer no compelling reason

10

why their challenge cannot similarly proceed within the designated statutory scheme and await ultimate review by a court of appeals.

As noted above, some recent cases addressing challenges to the SEC's choice of forum have reached the same conclusion. Only last week in this District, Judge Ramos held that plaintiffs similarly situated to those in this case could obtain meaningful review in a court of appeals. *See Spring Hill*, ECF No. 24, at 67:17-25. Judge Ramos rejected the plaintiffs' contention that "the burden of going through an agency proceeding" was enough to render eventual circuit court review meaningless, stating that "the party must patiently await the denouement of proceedings within the Article II branch." *Id.* at 69:12-16 (citing *Chau*, 2014 WL 6984236, at *12). In *Bebo v. SEC*, which also addressed circumstances nearly identical to those in the instant case, the court rejected the plaintiff's "objection to being subject to a procedure that she contends is wholly unconstitutional." 2015 WL 905349, at *4. In so doing, it held that "[i]f the process is constitutionally defective, [the plaintiff] can obtain relief before the Commission, if not the court of appeals." *Id.* Until then, the court held, the plaintiff must await the conclusion of the administrative proceedings. *Id.*

In *Chau*, Judge Kaplan similarly concluded that the court lacked jurisdiction to enjoin an SEC administrative proceeding. 2014 WL 6984236, at *1, 10. In response to the plaintiffs' claim "that they should not have to wait" because "[t]hey believe that the unfairness in their proceeding is manifest *now*," the court stated, in terms that apply equally to the present case, "Perhaps. Perhaps not. Indeed, if plaintiffs' arguments are as strong as they insist, then vindication will be theirs should the time come. But plaintiffs offer no compelling reason why the congressionally-specified route of review is inappropriate here, and the Court sees none." *Id.*[3]

---

[3] *Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir. 1979) does not alter the Court's analysis. In that case, the Second Circuit held that the district court had jurisdiction over a claim that the SEC had no statutory authority to

*Second*, Plaintiffs' argument that requiring them to pursue their claims within the administrative review process would subject to them to "significant and irreparable injury" because "[e]ven a successful appeal to the Court of Appeals 'would be unable to remedy the harm alleged'" is unavailing. Pls.' Br. at 12; Reply Br. at 9 (quoting *Duka*, 2015 WL 1943245, at *5). If a court of appeals vacates an adverse decision by the Commission on the very constitutional grounds Plaintiffs advance, it will vindicate Plaintiffs' claim to a constitutionally sound proceeding. *Cf. Mohawk Indus.*, 558 U.S. at 109 ("postjudgment appeals generally suffice to protect the rights of litigants").

To the extent Plaintiffs argue that being obliged to continue litigating before the ALJ and the Commission is itself so onerous that the statutory scheme should be thwarted, the Supreme Court has expressly rejected that argument. In *FTC v. Standard Oil Co. of California*, the respondent argued that "the expense and disruption of defending itself in protracted adjudicatory proceedings constitutes irreparable harm" that must be prevented by immediate judicial review. 449 U.S. 232, 244 (1980). The Court disagreed, stating that while it does not "doubt that the burden of defending this proceeding will be substantial . . . the expense and annoyance of litigation is part of the social burden of living under government." *Id.* (citation omitted); *see also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("[m]ere litigation expense,

---

enact attorney disciplinary rules. In so doing, it stated that "to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking." 609 F.2d at 577. In *Altman*, however, the court specifically rejected any reliance on *Touche Ross* in this regard, noting that "[c]ourts have read *Touche Ross* narrowly . . . and found its application especially inappropriate when a litigant invokes it to avoid agency review procedures, or when the agency in question is not acting plainly beyond its jurisdiction." 768 F. Supp. 2d at 561-62 (citation omitted). The Second Circuit affirmed, finding that the district court was correct in determining that the exception identified in *Touche Ross* did not apply. *Altman*, 687 F.3d at 46. Because there is no indication that Plaintiffs' constitutional claims are "plainly beyond" the SEC's jurisdiction, applying *Touche Ross* here would, in this Court's view, be "especially inappropriate."

12

even substantial and unrecoupable cost, does not constitute irreparable injury"). So it is the case here.[4]

Plaintiffs also allege that should the ALJ find for the Commission, they will be subject to "irreparable reputational and financial harm." *See* Pls.' Br. at 20. But this harm is no different than the harm that would follow a similar finding in district court. In any event, the assumption that there will be an adverse decision to cause such harm is speculative at this point. *See, e.g.*, *Burroughs v. Cty. of Nassau*, No. 13-CV-6784 (JS), 2014 WL 2587580, at \*8 (E.D.N.Y. June 9, 2014) (irreparable harm requires "actual and imminent" injuries, not merely "remote []or speculative" injuries). If the mere possibility that a party may lose in an administrative proceeding could confer jurisdiction on a district court where jurisdiction would otherwise be absent, administrative review schemes would be nullified.[5]

This is, of course, not to say that there may not be situations where the harm associated with precluding pre-enforcement review is so "serious and irreparable" as to render immediate judicial review necessary. *Thunder Basin*, 510 U.S. at 216. In *Free Enterprise*, for example, the Supreme Court ruled that no meaningful judicial review was available where, in order to obtain access to a court of appeals within the Exchange Act's review scheme, the petitioners would have had to "bet the farm . . . by taking violative action before testing the validity of the law." 561 U.S. at 490 (citation omitted). There, petitioners challenged the constitutionality of the Public Company Accounting Oversight Board ("the Board"), an administrative body created by Congress

_____

[4] To the extent that Plaintiffs claim that alleging a constitutional injury is itself sufficient to state a harm that would confer jurisdiction on a district court, they are mistaken. As the court in *Chau* stated, "some SEC respondents seem to believe that they can procure a one-way ticket out of an agency proceeding and into district court simply by raising a constitutional allegation. *Thunder Basin*, *Free Enterprise Fund*, and good sense say otherwise." 2014 WL 6984236, at \*6.

[5] While reputational harm and litigation expenses associated with defending the administrative proceeding may be "sufficient for purposes of Article III standing," *Duka*, 2015 WL 1943245, at \*5 n.9, this Court agrees with Defendants that "it has never been the case that anyone with standing could circumvent the SEC's exclusive remedial scheme" and confer district court jurisdiction where none would otherwise exist. Opp. at 9 n.5.

and placed under the oversight of the SEC. *Id.* at 484, 486. The Board could impose sanctions, subject to Commission review, and, under the Exchange Act, final orders of the Commission could be appealed to a court of appeals. *Id.* at 489. Because no Board sanction had been issued against petitioner, only an unappealable inspection report, the Court concluded that the Board had not taken any action that could be "encapsulated in a final Commission order or rule" from which judicial review could be sought. *Id.* at 490. As a result, in order to obtain judicial review, petitioners would have had to either "select and challenge a Board rule at random," or "*incur* a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony." *Id.* "If the Commission then affirms, the firm will win access to a court of appeals—and severe punishment should its challenge fail." *Id.* The Court thus held that risking "severe punishment" in order to obtain judicial review through the statutory scheme was not a "meaningful avenue of relief," and that this counseled in favor of finding district court jurisdiction over petitioners' claims. *Id.* at 490-91 (citation omitted); *see also McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 496-97 (1991) (finding district court had jurisdiction where "most aliens denied [Special Agricultural Worker] status can ensure themselves review in courts of appeals only if they voluntarily surrender themselves for deportation. Quite obviously, that price is tantamount to a complete denial of judicial review . . . ."); *Thunder Basin*, 510 U.S. at 218 (noting that district court jurisdiction could be proper where "the practical effect of coercive penalties for noncompliance [with a law] was to foreclose all access to the courts," or where "compliance is sufficiently onerous and coercive penalties sufficiently potent that a constitutionally intolerable choice might be presented").

Unlike in *Free Enterprise*, Plaintiffs here do not "need to induce an administrative proceeding," *Bebo*, 2015 WL 905349, at *3, because the administrative proceeding has already

been commenced against them.  They are not presented with a choice between risking "severe punishment" in order to obtain judicial review or foregoing judicial review altogether. Meaningful judicial review is already available to Plaintiffs—they may "raise [their] arguments before the SEC ALJ and on appeal to the Commission.  Then, if the Commission rules against [them], [they] can obtain judicial review in the court of appeals."  *Id.* at \*3; *see also Altman*, 768 F. Supp. 2d at 561 ("Finally, and most importantly, any constitutional challenge raised in [the plaintiff's] administrative proceedings will be meaningfully addressed in the Court of Appeals should Altman appeal the SEC's sanction against him.").

*Third*, Plaintiffs' argument that their constitutional claims "cannot be raised effectively in an administrative proceeding" is also unpersuasive.  Their contention that SEC rules bar them from raising these claims as counterclaims ignores the fact that these claims may be effectively raised as affirmative defenses.  Indeed, not only have other similarly situated parties already raised these claims as affirmative defenses in their SEC administrative proceedings, *see, e.g.*, Answer and Affirmative Defenses at 13, *In the Matter of Laurie Bebo*, File No. 3-16293 (filed Jan. 5, 2015), *available at* http://www.sec.gov/litigation/apdocuments/ap-3-16293.xml ("Fifteenth Affirmative Defense[:] This administrative proceeding violates Article II of the United States Constitution."), Plaintiffs themselves have done so as well.  *See* Answer at 10, *In the Matter of Lynn Tilton*, File No. 3-16462 (filed Apr. 22, 2015), *available at* https://www.sec.gov/litigation/apdocuments/ap-3-16462.xml ("First Affirmative Defense[:] The Commission and the Commission's Administrative Law Judges lack authority to conduct the proceedings herein.").[6]

_____

[6] Although Plaintiffs' affirmative defense is generally worded and could, presumably, refer to affirmative defenses other than the Article II challenge raised here, at oral argument Plaintiffs did not object to the SEC's assertion that they had already raised their Article II challenge in their first affirmative defense.  *See* Tr. at 20:3-6.

Plaintiffs' further contention that they cannot effectively raise their claims administratively because SEC rules "do not allow the kind of discovery of the SEC personnel necessary to elicit admissible evidence of such claims" is belied by their own admission that, as a purely legal matter, no discovery is necessary to adjudicate these claims. *See* Pls.' Br. at 11 ("The decisive—indeed, the only—question is whether SEC ALJs qualify as 'inferior officers' within the meaning of Article II"); Tr. at 4:8-23 (when asked at oral argument if discovery was necessary, Plaintiffs' counsel responded, "I don't think that your Honor has to deal with factual issues" in deciding the likelihood of success on the merits because the SEC has essentially conceded that the only issue is "very directly" whether ALJs are "officers" or not).

To the extent that other kinds of discovery may be relevant, there is no indication that evidence relating to Plaintiffs' affirmative defense would not be included in the administrative record. *See, e.g.*, 17 C.F.R. § 201.326 ("a party is entitled to present its case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as . . . may be required"); Opp. at 8. Furthermore, the Commission on review may "accept or hear additional evidence . . . or remand or refer the proceeding to a hearing officer for taking of additional evidence," 17 C.F.R. § 201.452,[7] and the court of appeals can remand the case for further fact-finding, if necessary. 15 U.S.C. §§ 77i(a), 78y(a)(5), 80a-42(a), 80b-13(a). The record on review to the court of appeals would, therefore, be adequate to address the constitutional questions at issue here.[8]

---

[7] Indeed, in a currently pending action before the Commission addressing the same Article II issues that Plaintiffs raise here, the Commission recently ordered that additional material be submitted for inclusion in the record. *See In the Matter of Timbervest, LLC et al.*, SEC Release No. 4096, 2015 WL 3398239, at *1 (May 27, 2015).

[8] In concluding that the district court had jurisdiction over the plaintiff's equal protection claim against the Commission in *Gupta v. SEC*, Judge Rakoff held that because the administrative record pertaining to that claim could not adequately be developed, there would not be meaningful review of such claim within the statutory scheme. 796 F. Supp. 2d 503, 513-14 (S.D.N.Y. 2011) ("the SEC's administrative machinery does not provide a reasonable mechanism for raising or pursuing such a claim. . . . [N]othing that happens in the administrative proceeding will bear on this claim, and no administrative record bearing on this claim will be developed for any federal appellate court to

16

Contrary to Plaintiffs' related argument, whether the ALJ has the authority to consider their constitutional claims or not, *see* Pls.' Br. at 11-12, is not determinative. The Supreme Court has repeatedly stated that even if an administrative tribunal cannot address the constitutional claims at issue, meaningful review will still be had so long as the remedial scheme provides for federal appellate court review of those claims. *See, e.g.*, *Elgin*, 132 S. Ct. at 2136-37 (noting that while the Merit Systems Protection Board ("MSPB") "has repeatedly refused to pass upon the constitutionality of legislation," this was not determinative of the jurisdictional analysis because the statute at issue "provides review in the Federal Circuit, an Article III court fully competent to adjudicate petitioners' [constitutional] claims"); *Thunder Basin*, 510 U.S. at 215 ("[e]ven if" the Federal Mine Safety and Health Review Commission could not consider constitutional claims, "petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals"). In any event, as the SEC points out, constitutional questions have been considered in numerous SEC administrative proceedings. *See* Opp. at 8 n.4. Indeed, as mentioned above in note 7, the Commission is currently hearing another case that has raised the same Article II challenge to the ALJ's appointment and removal scheme as Plaintiffs have raised here. *See In the Matter of Timbervest, LLC et al.*, SEC Release No. 4003, 2015 WL 242393, at *1 (Jan. 20, 2015) (ordering additional briefing on the "two-tiered tenure protection" issue); *Timbervest*, SEC Release No. 4096, 2015 WL 3398239, at *1 (May 27, 2015) (ordering additional briefing on the appointments issue).

---

review"). Unlike in the instant case, however, Gupta's claims were fact-intensive in nature; he had alleged that the SEC "intentionally, irrationally, and illegally singled him out for unequal treatment." *Id.* at 513. Accordingly, certain avenues of relevant discovery, such as "discovery of SEC personnel," would have been precluded in Gupta's administrative proceeding. Here, by contrast, the purely legal questions at issue are not fact-dependent and the administrative record would not be similarly lacking.

*Fourth*, and finally, Plaintiffs contend that the SEC ALJ and the Commission would be "inherently conflicted" in addressing Plaintiffs' claims.  Pls.' Br. at 12.  Plaintiffs rely on *Gupta*, which found that meaningful review would be foreclosed when "[t]he Commission, having approved the OIP . . . would be inherently conflicted in assessing such a claim . . . ."  796 F. Supp. 2d at 514.  The court in *Chau*, however, concluded otherwise, stating that while this claim "might have some force if adjudication before the SEC were the end of the line . . . of course it is not.  Plaintiffs can seek review of a final SEC order before a federal court of appeals and, if need be, an order to take additional evidence."  2014 WL 6984236, at *11.  This Court finds *Chau*'s reasoning persuasive and adopts it.  Any concern about the SEC's potential bias, even if warranted, may be fully addressed by a court of appeals.

In sum, Plaintiffs have not established that pursuing their claims through the statutory review scheme will result in a denial of meaningful judicial review.

### B.  Wholly Collateral

As to the second prong of the jurisdictional test, Plaintiffs contend that because they are bringing a "facial," rather than "as-applied" constitutional challenge, their claims are "wholly collateral" to the statutory review provisions.  Pls.' Br. at 9.  In so doing, they rely on language contained in *Chau*, in which the court stated:

> There is an important distinction between a claim that an administrative scheme is unconstitutional in all instances—a facial challenge—and a claim that it violates a particular plaintiff's rights in light of the facts of a specific case—an as-applied challenge.  As between the two, courts are more likely to sustain pre-enforcement jurisdiction over broad facial and systematic challenges, such as the claim at issue in *Free Enterprise Fund*.

*Chau*, 2014 WL 6984236, at *6 (citation omitted).

Because their claims "do not depend upon the facts of this particular case," Plaintiffs argue that their attack is facial, should be considered collateral, and should thus be heard in district court.

Pls.' Br. at 9. The court in *Chau*, however, recognized that its distinction between facial and as-applied constitutional claims did not provide a "hard-and-fast" jurisdictional rule. 2014 WL 6984236, at *6. Indeed, the Supreme Court in *Elgin* explicitly rejected such an inflexible rule, which the dissent would have adopted:

> The dissent carves out for district court adjudication only facial constitutional challenges to statutes, but we have previously stated that 'the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge.'

*Elgin*, 132 S. Ct. at 2135 (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010)). Accordingly, Plaintiffs' characterization of their challenge as facial rather than as-applied does not alter the Court's conclusion.

*Free Enterprise* and *Elgin* are further instructive as to what constitutes a "wholly collateral" claim. In *Free Enterprise*, the Court held that because the petitioner's challenge was unrelated to "any Commission orders or rules from which review might be sought," the claims were collateral to the administrative review scheme. 561 U.S. at 490. The *Elgin* Court, meanwhile, held that because the petitioners' claims were "the vehicle by which" they sought "the kinds of relief" routinely afforded by the agency, and were of a type "regularly adjudicated" by the agency, their claims were not "wholly collateral." 132 S. Ct. at 2139-40.

Whether Plaintiffs' claims should be considered collateral is a close question. It is true that the constitutional challenge is unrelated to the securities violations underlying the administrative proceeding; it also does not pertain to "any Commission orders or rules," but rather the constitutionality of the proceedings generally. *Free Enter.*, 561 U.S. at 490; *see also Gupta*, 796 F. Supp. 2d at 513 (the plaintiff's equal protection challenge "would state a claim even if Gupta were entirely guilty of the charges made against him in the OIP"). The SEC's argument

19

that the claims are not collateral because they are the vehicle "by which Plaintiffs seek to halt the administrative proceeding against them," Opp. at 10, overlooks *Elgin*'s other considerations, namely that the nature of the claims and the relief sought were of the kind "regularly" subject to and afforded by the administrative review scheme. *Elgin*, 132 S. Ct. at 2139-40. Seeking to halt ALJ proceedings based upon alleged structural constitutional violations cannot reasonably be characterized as the "regular" or "routine" business of SEC administrative proceedings.

Nonetheless, because Plaintiffs have raised these issues as an affirmative defense in the administrative proceeding, it is difficult to see how they can still be considered "'collateral' to any Commission orders or rules from which review might be sought," *Free Enter.*, 561 U.S. at 490, since the ALJ and the Commission will, one way or another, rule on those claims and it will be the Commission's order that Plaintiffs will appeal, if in fact it finds against Plaintiffs. Moreover, unlike in *Free Enterprise*, where the petitioners' claims were necessarily collateral to any administrative review scheme because they were not subject to an administrative proceeding at the time they filed their action, Plaintiffs here are already within the review mechanism. Their challenge therefore flows from the fact that they are the subject of the proceeding that they seek to enjoin, and any administrative ruling on their defense will be appealable. Furthermore, if the ALJ or the Commission agree with Plaintiffs and dismiss the administrative proceeding, Plaintiffs will have obtained from the agency the relief sought. Seen in this light, the claims are not collateral to the proceedings, but rather intertwined. Indeed, it would be curious for Congress to have intended for a claim that can be adequately raised within the administrative review procedures it created to also be considered "wholly collateral" to them.

Since Plaintiffs here are able to raise their claims within the administrative scheme, the Court cannot conclude that these claims are wholly collateral to that scheme. This conclusion

may be different for an otherwise situated litigant—for example, one who had to "bet the farm" to trigger any review at all, as in *Free Enterprise*.   In that circumstance, a plaintiff not subject to any administrative proceeding but armed with viable claims against the SEC could bring such claims in district court as ones wholly collateral to any "Commission orders or rules from which review might be sought."   *Free Enter.*, 561 U.S. at 490.   Given, however, that Plaintiffs here can, and have, raised their claims within the administrative scheme, these claims cannot be similarly categorized as wholly collateral to the administrative review scheme.   The opposite holding would seem to defeat Congressional intent, as any litigant subject to an administrative proceeding would be invited to escape agency adjudication by fashioning an incidental constitutional challenge and claiming that it is wholly collateral to the pending proceedings.   The Court declines to so hold.

## C. Agency Expertise

Finally, the Court recognizes that the particular constitutional questions here may not be within the SEC's expertise. *See Free Enter.*, 561 U.S. at 491 ("the statutory questions involved do not require technical considerations of [agency] policy.   They are instead standard questions of administrative law, which the courts are at no disadvantage in answering") (citation omitted). Given the meaningful review otherwise available, however, this factor does not change the Court's conclusion that it lacks jurisdiction.

Although the Supreme Court has stated that "[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies," it has also cautioned that "[t]his rule is not mandatory . . . ." *Thunder Basin*, 510 U.S. at 215 (first alteration in original) (citation omitted).   The court in *Chau*, for example, after rightly noting that "the judicial branch is the ultimate arbiter of constitutional law," nevertheless held that district court jurisdiction was precluded given that the SEC could—and had—considered the

21

plaintiffs' constitutional claims.  2014 WL 6984236, at *13.  There, the plaintiffs raised equal protection claims before an ALJ, who ruled on the issue.  *Id.*  Thereafter, the plaintiffs sought approval for interlocutory appeal from the Commission, which also considered the merits of the plaintiffs' argument.  *Id.*  The court concluded that even though adjudication of constitutional claims are "not peculiarly within the SEC's competence . . . that does not mean that the SEC is powerless to consider constitutional issues that arise during agency hearings."  *Id.*  The SEC's efforts in adjudicating those claims thus "indicate that the SEC is competent to consider plaintiffs' constitutional claims, at least in the first instance."  *Id.*

The same is true here.  Not only have Plaintiffs already raised their present claim as an affirmative defense in their answer to the OIP, but the Commission, as mentioned above, is currently considering these precise Article II challenges in another case before it.  *See Timbervest*, 2015 WL 242393, at *1; 2015 WL 3398239, at *1.  As in *Chau*, the SEC here is entirely "competent to consider plaintiffs' constitutional claims, at least in the first instance."  *Chau*, 2014 WL 6984236, at *13; *see also Thunder Basin*, 510 U.S. at 215 (finding district court jurisdiction precluded and noting that the Federal Mine Safety and Health Review Commission "has addressed constitutional questions in previous enforcement proceedings").  In any event, even if an agency were "powerless" to consider constitutional claims, *Thunder Basin* and *Elgin* counsel that this is not sufficient to bypass the statutory remedial scheme where meaningful judicial review is otherwise available.  *See Thunder Basin*, 510 U.S. at 215; *Elgin*, 132 S. Ct. at 2137.  Thus, even if the SEC lacked the authority, competence, or expertise to adjudicate Plaintiffs' constitutional claims, because meaningful review of those claims in an Article III court of appeals is available, district court jurisdiction would still be precluded.

## CONCLUSION

Plaintiffs contend that it is unconstitutional—and unfair—for the Commission to subject them to an enforcement action before the Commission's own Administrative Law Judge. But that question is not for this Court to decide. Congress has carefully delineated the distinct roles of the Commission and the courts in cases such as this. It rests first with the Commission to determine whether to commence an action at all, and if so, whether to do so in federal district court or in its own administrative tribunal. Having chosen the latter, it rests with an ALJ and then the Commission to rule on Plaintiffs' claims. That decision in turn is subject to appeal to a federal court of appeals. In this Court's view, there is no basis to allow Plaintiffs to bypass this congressionally created remedial scheme. Accordingly, this Court lacks subject matter jurisdiction over this action.

Plaintiffs' motion for a preliminary injunction is denied. The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

Dated:     June 30, 2015
            New York, New York

Ronnie Abrams
United States District Judge

23